Decided 5 March, 1907.

### SEAWEARD *v.* PACIFIC LIVESTOCK CO.

88 Pac. 963.

WATERS—RIGHT BY RELATION—CONTINUITY OF APPROPRIATION.

1. Where the increase in the area of arable land for the irrigation of which water has been diverted varies with and is measured by the lapse of time, the additional application of water annually to meet the augmented demand, provided the appropriation is completed within a reasonable time, causes the entire appropriation to relate back to its inception, thereby cutting off all intervening rights of adverse claimants.

WATERS—TIME ALLOWED TO EXTEND APPROPRIATION.

2. The application of appropriated water to a beneficial purpose must be made with reasonable promptness, in view of the means of the appropriator and the physical obstacles encountered; and the same rule applies to extending the use or the enlargement of the cultivated area to be irrigated.

EXAMPLE OF UNNECESSARY DELAY IN ENLARGING USE OF WATER.

3. A delay of five years in extending the use of water to additional ground or other uses is *prima facie* unreasonable, and appropriations from the same source made during those years are superior to the claim of the original appropriator for more water than was being used when work ceased.

RIGHT OF APPROPRIATION BY TRESPASSER.

4. The rights acquired by the appropriation of water to be used on land in possession of a trespasser are considered but not decided. In the present case the allotment is sustained because the land has since passed to the true owner who is using the water for proper purposes.

From Malheur: GEORGE E. DAVIS, Judge.

Suit by J. H. Seaweard and another against the Pacific Livestock Co. and others to enjoin interference with the flow of water in a certain stream. From the decree adjudging the rights of the parties in the stream, plaintiff and defendant Pacific Livestock Co. appeal.        AFFIRMED.

For plaintiff there was a brief over the name of *King & Brooke,* with an oral argument by *Mr. William Rufus King.*

For defendant Pacific Livestock Co. there was a brief and an oral argument by *Mr. John Langdon Rand.*

MR. JUSTICE MOORE delivered the opinion of the court.

This is a suit to enjoin interference with the flow of water in the channel of Crooked Creek, in Malheur County. The complaint states in effect that the plaintiffs, J. H. Seaweard and Anderson Loveland, are prior appropriators of water from that stream; that the defendant the Pacific Livestock Co., a corporation, is digging a ditch above their lands and threatening to divert all the water of the creek, to their irreparable injury; and that the defendants Pearl Duncan and Pedro Germain are using water for irrigation to which the plaintiffs are entitled. Germain made default; but, issues having been joined as to the other defendants, the cause was tried, and from the testimony taken the court made findings of fact, and, based thereon, concluded as matters of law that the Pacific Livestock Co. has a prior appropriation of 100 inches of water from the creek, and that the relative rights of the other parties to the use of the water of the stream and the extent of the subsequent appropriations thereof are as follows: Loveland, 150 inches; Seaweard, 120 inches; and Duncan, 80 inches—miners' measurement, under 6-inch pressure, all of which rights are superior to the claim of the corporation to the use of any water in excess of 100 inches. A decree having been rendered in accordance with the findings, the plaintiffs and the Pacific Livestock Co. separately appeal.

The testimony shows that Crooked Creek is a perennial stream

issuing from a spring situated on land owned by the Pacific Livestock Co. and flowing northeasterly through the premises of all the parties hereto, except those of Duncan; that A. J. Morgan and C. W. Hinkey settled upon public lands near this spring, and in 1886 and the following year dug ditches and diverted water from the creek, which they respectively used on the premises claimed by them, and, having secured patents therefor, the title to such lands, by mesne conveyances, became vested in the corporation in 1900; that the plaintiff Loveland made a homestead entry on land below the premises so owned by the Pacific Livestock Co., and in 1886 diverted water from the creek with which he irrigated his land; that his brother, without any claim of right thereto, took possession of a section of land owned by the Oregon Central Military Road Co., and irrigated a part of it from the creek, which premises are now leased to the plaintiff last named, who was awarded 100 inches of water for the irrigation thereof; that E. W. Crutcher settled on public land situated below Loveland's, diverted water from the creek in 1895 for irrigation, and, having secured a patent for his land, conveyed it to the plaintiff Seaweard; that defendant Duncan settled on government land situated below Seaweard's premises, and dug a ditch from the stream mentioned, the head of which is above that of the latter's conduit, and diverted water for irrigation; and that the Pacific Livestock Co., in 1904, having built a dam in the creek nearer the spring and commenced to dig a ditch on higher ground, so as to irrigate more of its land than was then possible, this suit was instituted, resulting in a decree as hereinbefore indicated.

The plaintiffs' counsel admit that such corporation has a prior appropriation, but contend that errors were committed in awarding it more than 50 inches of water as the measure of its right, in not requiring the dam which it constructed to be removed, and in not enjoining the use of any water through the new ditch. The legal principles thus maintained are disputed by counsel for the Pacific Livestock Co., and they insist that errors were committed in awarding Loveland the use of any water from the

creek for the irrigation of the land leased to him, and in not permitting their client to use all the water of the stream, if necessary, in irrigating its lands. We will consider these questions in their inverse order.

1. An examination of the testimony discloses that from 1899, when Morgan and Hinkey respectively conveyed the real property which the Pacific Livestock Co. now owns, at the head of Crooked Creek, until 1904, a period of five years, there was no attempt made to increase the area of such arable land originally irrigated, and that during that time Loveland, Seaweard and Duncan, respectively, appropriated water which the corporation continually permitted to flow in the channel of the stream to the head of their ditches. When an ordinarily prudent person makes a prior appropriation to irrigate arid land of which he is the owner, or in the lawful possession expecting to acquire title thereto, if such land will be benefited by irrigation, and the volume of the stream is sufficient therefor, it is reasonable to suppose that he has in mind both the extent of his land and the amount of the water at the time of his appropriation, and that he intends to reclaim the entire area thereof, either by the ditches constructed at the time or by a canal system then in contemplation. But pioneers on the public domain do not ordinarily possess great wealth, and hence cannot rapidly convert arid land into farms; and, such being the case, the law allows a reasonable time in which to complete the appropriation. If the increase in the area of arable land for the irrigation of which water has been diverted varies with and is measured by the lapse of time, the additional application of water annually to meet the augmented demand causes the appropriation to relate back to its inception, thereby cutting off all intervening rights of adverse claimants to the use of such water: *Simmons* v. *Winters,* 21 Or. 35 (27 Pac. 7: 28 Am. St. Rep. 727) ; *Hindman* v. *Rizor,* 21 Or. 112 (27 Pac. 13) ; *Cole* v. *Logan,* 24 Or. 304 (33 Pac. 568) ; *Smyth* v. *Neal,* 31 Or. 105 (49 Pac. 850).

2. What is a reasonable time in which to apply water originally intended to be used for some beneficial purpose depends

upon the magnitude of the undertaking and the natural obstacles to be encountered in executing the design: *Hindman* v. *Rizor,* 21 Or. 112 (27 Pac. 13) ; *Nevada Ditch Co.* v. *Bennett,* 30 Or. 59, 85 (45 Pac. 472: 60 Am. St. Rep. 777). "The appropriator," says a text-writer, "must exercise that degree of diligence which will indicate the constancy and steadiness of purpose and labor usual with men engaged in like enterprises, who desire a speedy accomplishment of their designs, and will manifest to the world a *bona fide* intention to complete the work without unnecessary delay": Long, Irrigation, § 41.

3. The testimony shows that Morgan and Hinkey were constantly enlarging the area of their arable land until 1899, when they executed deeds thereof; but from that time until 1904 their successors in interest made no attempt whatever to prepare any new land for cultivation, whereby a purpose to expand the appropriation might have been disclosed to persons who desired to make a subsequent use of the water. No cause is assigned for the delay indicated, and, believing it to have been unreasonable, the right of the Pacific Livestock Co. to the use of the water of the creek is limited to the appropriation made by its predecessors in interest, thereby rendering subsequent applications of the excess of such water by others valid: *Cole* v. *Logan,* 24 Or. 304 (33 Pac. 568).

4. The testimony shows that without any authority therefor one Ervin Loveland took possession of land owned by a military road company, constructed a ditch from the creek in 1888, and irrigated the premises each season until 1891, when he sold his interest therein to his brother, the plaintiff, who secured a lease of the land and was allotted by the decree 100 inches of water for its irrigation. When such use began the creek contained water that was subject to appropriation; and, this being so, should the irrigation of the land mentioned be continued? It was held by the Supreme Court of California that a trespasser on private land, who diverted water for the irrigation thereof, made the appropriation appurtenant to the premises benefited by the use: *Alta Land & W. Co.* v. *Hancock,* 85 Cal. 219 (24

Pac. 645: 20 Am. St. Rep. 217). The Supreme Court of Nevada, however, reached a different conclusion, and held that a trespasser on land could change the use made by him·of water thereon to other real property: *Smith* v. *Logan,* 18 Nev. 149 (1 Pac. 678). In *Smith* v. *Deniff,* 23 Mont. 65 (57 Pac. 557: 50 L. R. A. 737), in constraining the statute of Montana, it was held that the right to take water from or over the land of another was in the nature of an easement in gross, which might or might not be annexed or attached to land on which the water was used as an appurtenance thereto. In that case one Oscar Cosins, being in possession of land pursuant to a contract with a railroad company, the owner thereof, diverted water which he used in irrigating the premises. He mortgaged his interest in the real property, including the ditches and water rights, and, the lien having been foreclosed, the plaintiff secured a sheriff's deed of the property specified. The defendant, having obtained possession of the land, prevented the plaintiff from changing the use of the water to other lands, and in a suit to determine the rights of the parties it was adjudged that the sheriff's deed transferred the interest which Cosins had in the water right which was not an incident of or attached to the land that had been irrigated thereby. In that case it was stated in the original opinion that the water was used on the land by a tenant in possession of the premises; but on a rehearing it was observed that Cosins was in possession under a contract with the owner, the court remarking: "What the contract was does not appear." In Montana it was ruled that a lessee of land was entitled to appropriate water for use thereon: *Sayre* v. *Johnson,* 33 Mont. 15 (81 Pac. 389). The dictum of Mr. Justice STEELE of Colorado is to the same effect, for he says: "No reason is assigned in the brief of counsel why one who is the lessee of land may not own a water right, and we know of no reason why the lessee of land may not buy· and hold a water right, or why a mere occupant of land may not become the owner of a water right, and use it himself or sell it to some one who will use it": *Cooper* v. *Shannon,* 36 Colo. 98 (85 Pac. 175). Whether or

not the right to use the water from the creek for irrigation is an incident to the land leased to Loveland, or is in the nature of an easement in gross which belongs to him as the tenant in possession of the premises, cannot now be determined, since the Oregon Central Military Road Co. is not a party to this suit, and hence could not be bound by any decree that might be rendered herein. The right, however, is probably owned by the landlord or by the tenant, and in either case, as the water is to be used for irrigating the demised premises, we think the court properly decreed an allowance therefor.

The spring which is the source of the creek mentioned supplies a constant stream, unvarying in the quantity of water that it discharges, which volume the court found to be 800 inches, miners' measurement, under 6 inches of pressure. There is undoubtedly a surplus of water after supplying the quantity decreed to the several parties, and, this being so, we do not see how the plaintiff can be injured by the maintenance of the enlarged dam or the diversion by the new ditch, as proposed by the Pacific Livestock Co. If the other parties secure the quantity of water allotted to them, they ought not to complain because of the proposed change in the use by the corporation.

A careful examination of the testimony convinces us that the quantity of water to which the several parties are entitled and the order of their respective rights to the use thereof are correctly stated by the court, and hence the decree is affirmed.

AFFIRMED.