Argued November 2, decided December 14, 1909.

# WHITED v. CAVIN.

[105 Pac. 396.]

WATERS—IRRIGATION—APPROPRIATION OF WATER RIGHTS—DILIGENCE.

1. Where an irrigation ditch was completed within four years from the commencement thereof, it was within a sufficient time, in view of the difficulties encountered in its construction.

WATERS—WATER RIGHTS—APPROPRIATION—RELATION BACK.

2. Where the construction of irrigation ditches was prosecuted with proper diligence, the rights acquired related back to the commencement of the work.

WATERS — IRRIGATION — CHANGE IN POINT OF DIVERSION — WHEN ALLOWED.

3. A change in the point of diversion of water for irrigation and place of use may be made when it can be done without prejudice to the rights of others.

WATERS—APPROPRIATION OF WATER RIGHTS—PRIORITIES.

4. Any person or number of persons may have an interest in or become the exclusive owner or owners of different water rights, each of which rights may have had their inception at different times, and in such cases the order of their respective priorities must necessarily depend on the dates of the initiation of each particular right.

WATERS—APPROPRIATION—QUANTITY LIMITED.

5. The right to water claimed by prior appropriators for irrigation is limited in quantity by the use for which the appropriation is made and to which it may in reasonable time be applied.

WATERS—APPROPRIATION—IRRIGATION—QUANTITY.

6. The beneficial use and the needs of the appropriators of water for irrigation, and not the capacity of the ditches, or quantity first run through them, is the measure and limit of the right of the appropriators.

WATERS—IRRIGATION—CAPACITY OF DITCH.

7. The capacity of an irrigation ditch is the utmost limit of the right of the appropriators.

EVIDENCE — OPINION EVIDENCE — IRRIGATION — AMOUNT OF WATER REQUIRED.

8. Testimony as to the quantity of water required for proper irrigation of lands in a certain vicinity, examined, held to be opinion evidence, only.

EVIDENCE—WEIGHT—CREDIBILITY OF WITNESS—OBVIOUS INACCURACIES.

9. Testimony of a witness that a flow of 17 inches of water per acre was necessary for the irrigation of certain lands was so obviously unreliable that it will not be accepted by the court, though undisputed.

WATERS—IRRIGATION—QUANTITY OF WATER NECESSARY—EVIDENCE.

10. Under the evidence, held, that 10 second feet, or 400 inches, was ample for the irrigation of plaintiff's land having an area of 440 acres.

WATERS — IRRIGATION — QUANTITY REQUIRED — USE BY OTHERS — PRIORITIES.

11. Where the quantity allowed a particular owner for irrigation is not required, it becomes subject to use by others on the stream in the order of their rights.

WATERS—IRRIGATION—APPLICATION OF WATER—LIMIT TO PARTICULAR
LANDS.

12. Where an owner relied for his water rights on a diversion made through a particular ditch, he is limited in his use to the lands under that ditch which may be irrigated by water diverted through it or other ditches under it, and, while not necessarily confined to the same specific tracts upon which the water has theretofore been applied, he is restricted to acreage upon which the appropriation was perfected at the time of the inception of the water rights of other claimants which did not exceed the number of acres previously owned by him.

WATERS—ACTION TO DETERMINE WATER RIGHTS—APPEAL—RELIEF TO
NONANSWERING DEFENDANTS.

13. Ordinarily, a judgment by default will not be disturbed; but, water suits being *sui generis,* the court may exercise its discretion, and where a quantity of water was awarded to plaintiff, as against nonanswering defendants, far greater than necessary for his use, the decree will be modified by reducing the quantity.

WATERS—IRRIGATION—ACTION TO DETERMINE RIGHT.

14. An action to determine water rights may be maintained against any persons claiming adversely or who are necessary to a complete determination of the controversy, though plaintiff is not injured by any interference by defendants.

WATERS — ACTION TO DETERMINE RIGHTS — RELIEF AS BETWEEN
DEFENDANTS.

15. In an action to determine water rights, it was error to adjudicate the relative rights of defendants as to each other, where no issue was made or attempted to be framed between them and all the parties were not ordered brought in.

From Baker: WILLIAM L. BRADSHAW, Judge.

Statement by Mr. Justice KING.

This is a suit by Thos. J. Whited, William Wham, Jos. Wham, Belle M. Whited and George Whited against Samuel Cavin and others, to determine the right, as between plaintiffs and defendants, to the use of the waters of the south fork of Burnt River in Baker County. The complaint is in the usual form, and pleads prior appropriation by plaintiffs, as against all of the defendants, to the use of 750 inches of the waters of the stream, averring the inception of their rights to be in the spring of 1881, but does not seek a determination of the plaintiff's rights, as between themselves.

Defendants Samuel Cavin, Mike Rouse, Mrs. Lizzie Carniga, Mrs. Delilah G. Nelson, Mrs. Ella Powell, administratrix of the estate of John Powell, deceased, and

J. M. Laport, answered, and, after the usual denials, pleaded ownership in lands therein described and prior appropriation of the water used in the irrigation thereof, and ask: That the heirs at law of John Powell, deceased, be decreed to be the owners of a water right, and the right to take water from the south fork of Burnt River, to the extent of 75 inches, for irrigation purposes upon their premises; that such right be decreed to be prior in time and first in right as against the plaintiffs, and each of them; that the heirs of the estate of John Powell, deceased, and the defendant, J. M. Laport, be decreed to be the owners, jointly, of a water right, and right to take water from the south fork of Burnt River, to the extent of 300 inches, for irrigating purposes, upon the lands described in the complaint as belonging to them; that this right be decreed to be prior in time and superior in right, as against the plaintiffs, and each of them, except as to the right of Thomas J. Whited, to the extent of 50 inches of water from the south fork of Burnt River; that the defendants Samuel Cavin, Mrs. Lizzie B. Carniga, Mrs. Delilah G. Nelson, the estate of Thomas Drislin, deceased, Viola Munn, and E. L. Sanford be decreed to be the prior and superior owners of the right to divert water from the river mentioned, to the extent of 400 inches, for the irrigation of their premises, as against plaintiffs' and each of them, except Thomas J. Whited, to the extent of 50 inches, and no more. The defendants George Fleetwood, Fulton Fleetwood, C. P. Lawrance, H. C. Elms, George Elms, Thomas Elms, William Morfitt, William Chamberlain, James M. Moore, George Fosnot, and Boyd Elliott interposed a demurrer to the complaint, which was overruled, and, declining to further plead, a decree was entered for want of an answer, awarding to plaintiffs, as against them, the first right to the use, for irrigation purposes, of 750 inches of the waters involved.

Plaintiffs, replying to the answer, placed the cause at

issue as between them and the answering defendants, and testimony was taken thereon, based upon which the court entered a decree, awarding to plaintiffs, as against the answering defendants, and each of them, the first and prior right to the use of 564 inches of water, miner's measurement, from the south fork of Burnt River, to be diverted to and upon their premises. The findings and decree further set out and determine the rights of all the defendants upon whom service of summons was had, as between themselves, followed by the usual inhibitions, awarding to plaintiffs, as against all the defendants, their costs and disbursements. From this decree, defendants J. M. Laport, Mrs. Ella Powell, Samuel Cavin, Mike Rouse, Mrs. Lizzie Carniga, and Mrs. Delilah G. Nelson appeal.                                          MODIFIED.

For appellant there was a brief over the names of *Mr. John L. Rand* and *Mr. Samuel White* with an oral argument by *Mr. Rand.*

For respondent there was a brief over the names of *Messrs. Hart & Nichols* with an oral argument by *Mr. Julius N. Hart.*

There was also a brief over the name of *Mr. Gustav Anderson, amicus curiae.*

MR. JUSTICE KING delivered the opinion of the court.

A careful examination of the record discloses the following state of facts: The south fork of Burnt River is a perennial stream, furnishing a supply, during the dry period of each year, of from 20 to 40 second-feet of water, and rises near the southwest corner of Baker County, flowing northeasterly through an arid section of country, for a distance of about 12 miles, where it empties into the main channel of Burnt River. In 1880 Thos. J. Whited, one of the plaintiffs, settled on the south fork of Burnt River, where he has since resided. Some time

in 1881, at a point on the west bank of the stream, and a short distance above the southwest corner of his land, in the northeaest corner of the southeast quarter of section 1, township 13 south, range 36 east, W. M., he commenced and constructed, for a distance of about 300 feet, a ditch three feet in width and of about the same depth, when the work was discontinued. The following year he continued his survey and construction of the ditch contemplated by this location, extending it about a quarter of a mile. As thus extended the ditch was reduced in size and made large enough only to meet his immediate demands, consisting in the irrigation of a small crop then in cultivation on his premises. By the year 1883 the other plaintiffs settled in the same neighborhood, who, in the spring of that year entered into an agreement with the Whiteds, whereby the ditch, begun in 1881, should be enlarged and extended to cover the lands lying thereunder, and soon after such enlargement and extension, during the same year, some water was conveyed through the ditch to and over the Whited property. This canal is now known as the "Wham-Whited Upper ditch." Plaintiffs' joint holdings along the stream aggregate 1080 acres of land, not more than 480 acres being west of the creek and under the ditch or canal mentioned, the tillable portion of which, not exceeding 440 acres, was intended to be reclaimed by their appropriation. The defendants, and their predecessors in interest, settled upon the south fork of Burnt River after the commencement of the construction of the ditch mentioned. At the time plaintiffs began the enlargement of their canal, none of the defendants had taken any steps toward the location of water rights in that vicinity. The "Wham-Whited Lower ditch" was constructed in 1887, and is a part of the system contemplated by the enlargement of the upper ditch of that name. The "Tiger Ditch" was constructed in 1895, tapping the channel of the creek about a mile and a quarter

above the Wham-Whited Upper ditch. Its ownership is not clear, but appears to be plaintiffs, Thomas J. Whited and Joseph Wham, and defendants James Moore, Boyd Elliott, George Fosnot, and M. L. Hoskins. The Tiger and Curop & Co.'s ditches were constructed after the appropriation made by appellants through their canals, herein described.

1. In the spring of 1884, J. M. Laport initiated a water right through what has since been known as "Powell's East ditch," which was used during that season in the irrigating of three or four acres of land. In the year 1887, Laport initiated another water right, higher up the river, by digging a few rods of ditch, tapping the stream at a point on the west side of Section 13, and, a few months later, entered into an agreement, respecting this contemplated appropriation, with John Powell, and, as a result, had surveyed what is known as the "Powell-Laport ditch." Along this line of survey they dug in 1887, a ditch, tapping some warm springs situated near the river and secured thereby, for irrigation purposes, a flow of 75 to 100 inches. The following year this canal, for the purpose of irrigating the Powell and Laport farms, was extended up the stream to a point where it connected with the few rods of ditch last mentioned, tapping the south fork of Burnt River, and diverting therefrom a larger quantity of water. This ditch has a carrying capacity of 360 inches, having been extended from year to year until 1894, when it was completed to the point of its present use. What is designated as the "Campbell" or "Elms" ditch taps the south fork of Burnt River near the center of the north line of Section 23, and is used in the irrigacion of the lands of some of the non-answering defendants. The construction of this ditch was begun about the year 1888, and subsequently enlarged, the extent of which is not clear; but in 1894 it was increased to its present carrying capacity, estimated at 554 inches. The

water right acquired through what is known as the "Cavin ditch" was initiated about the year 1886. This ditch, the capacity of which is estimated at 374 inches, taps the east side of the south fork of Burnt River about 1½ miles above the Campbell or Elms ditch, and was first extensively used in 1889, in the irrigation of lands owned by the predecessors in interest of Samuel Cavin, Mrs. Lizzie B. Carniga, E. B. Carlisle, Mrs. Delilah G. Nelson, Mike Rouse, and E. L. Sanford. The canal known as the "Lancaster ditch" taps the east side of the south fork of Burnt River above the Cavin ditch, and, like the Cavin ditch, runs in a northeasterly direction. It was begun and completed prior to the year 1891, has a carrying capacity of 440 inches, and has been used in the irrigation of lands owned by Rouse Bros., C. G. Nelson, and G. W. Fleetwood. It thus appears that plaintiffs' rights in and to the waters of the south fork of Burnt River were initiated prior to those of any of the defendants. Arrangements were made in 1883, whereby the plaintiffs joined in the enlargement and extension of the ditch begun by Whited in 1881, and the work of enlarging and extending it, to cover their lands, was diligently prosecuted until its completion, which was accomplished within four years from the commencement thereof. This, we believe, in view of the difficulties encountered in its construction, and other circumstances, disclosed by the record, was within a reasonable time. *Moss* v. *Rose,* 27 Or. 595 (41 Pac. 666: 50 Am. St. Rep. 743) ; *Nevada Ditch Co.* v. *Bennett,* 30 Or. 59, 61 (45 Pac. 472: 60 Am. St. Rep. 777).

2. It is well settled in this State that, under such circumstances, plaintiffs' rights relate back to the commencement of their work in 1883, and that Thomas J. Whited's rights therein attach at an earlier period, the date of which is not material to this controversy. *Nevada Ditch Co.* v. *Bennett,* 30 Or. 59 (45 Pac. 472:

60 Am. St. Rep. 777). The principal question, then with which we are confronted, involves the quantity of water to which plaintiffs are entitled. Whited testifies that, in cleaning out the ditch from year to year, it has been enlarged from 10 to 30 per cent in excess of its original size. Other witnesses give evidence to the same effect; some placing its carrying capacity, at the time of its completion in 1887, as low as 100 to 150 inches, while others say it has increased in size and capacity to from one third to one half. Taking all of the testimony into consideration, we think it reasonably safe to infer that the carrying capacity of the Wham-Whited Upper ditch has, since 1887, been increased about 30 per cent, and that, at the time of the location of the appellants' water rights, it was about 10 second feet, or 400 inches. This, we find, is the quantity to which plaintiffs, as against all the defendants, are entitled, west of the channel of the creek and below the Wham-Whited Upper ditch, for a sufficient time during each irrigation season to properly irrigate their lands.

Plaintiffs do not, in this proceeding, assert any claim to a water right, as against defendants, through the Tiger ditch, but seem to rely upon the rights acquired by their enlargement and extension, in 1883, of the Wham-Whited Upper ditch. The answering defendants (appellants), however, set up their rights, and claim, as prior appropriators against the plaintiffs, all of the water required to fill their ditches, except 50 inches (without pressure), conceded as a first right to Thomas J. Whited, and (excepting the 400 inches here awarded plaintiffs) have established a prior right to such quantity as was diverted and in actual use by them in 1895, when the Tiger ditch was built. But the quantity required and actually appropriated, and acreage upon which applied, at that time, is not sufficiently established to enable us to determine the quantity which should be awarded them as a second

right, and prior to the appropriation which might be asserted through the Tiger ditch. Moreover, but two of the plaintiffs, Thomas J. Whited and Joseph Wham, appear to be interested in the Tiger ditch and water right, while the others interested therein are defendants, and no issues are framed between the owners of this ditch and water right sufficient to enable a court to determine their relative rights. Counsel for plaintiffs argue that the use through the Tiger ditch is merely a change in point of diversion. A change in the point of diversion and place of use may be made when it can be done without prejudice to the rights of others (*Hough* v. *Porter,* 51 Or. 318, 438: 95 Pac. 732: 98 Pac. 1083: 102 Pac. 728) ; but it is not disclosed, by the evidence, to be the purpose to change either the point of diversion or the place of use.

4. On the other hand, it is clear that not only is there no intention to abandon any land irrigated through plaintiffs' first ditch, but that the Tiger ditch, and diversion through it, is intended for use upon additional lands. In fact, it is evident that this is a new and additional appropriation, in which persons other than plaintiffs' are interested, and must be treated as such. Any person or number of persons may have an interest in, or become the exclusive owner or owners of, different water rights, each of which rights may have had their inception at different times, and in such cases the order of their respective priorities must necessarily depend upon the dates of the initiation of each particular right. Long, Irrigation, §§ 58, 59.

Under this state of the record, we deem it advisable not to attempt a determination of any rights between either the plaintiffs or defendants, relatively or otherwise, respecting the water rights claimed through the Tiger ditch by the plaintiff Whited or others, further than that the appropriation through this canal, whatever

it may be, is subsequent in time and right to such interest of the answering defendants as may have attached prior to 1895. The purpose of alluding to the dates of the appropriation of the defendants is merely to determine when their rights attached relative to interests initiated through the Wham-Whited Upper ditch and Tiger ditch respectively, and for no other purpose; nor will our reference thereto be deemed an adjudication of any of the relative rights of defendants in subsequent controversies, if any.

5. Plaintiffs, however, insist upon a right, through their appropriation of 1883, for all lands brought under cultivation since that date; but this contention cannot be upheld. The right to water, claimed by prior appropriators for irrigation purposes, is always limited in quantity by the use for which the appropriation is made, and to which it may, in a reasonable time, be applied.

6. It is so well settled as almost to become axiomatic that beneficial use and the needs of the appropriators, and not the capacity of the ditches, or quantity first run through them, is the measure and limit of the right of the appropriators.

7. While the quantity to which the appropriators may be entitled does not necessarily equal the carrying capacity of the ditch, the capacity thereof is essentially the utmost limit of such right. *Seaweard* v. *Pacific Live Stock Co.*, 49 Or. 157 (88 Pac. 963); *Williams* v. *Altnow*, 51 Or. 275, 302 (95 Pac. 200: 97 Pac. 539). Measured by this rule, plaintiffs are, as first appropriators, limited to the capacity of the ditch, which at the inception of defendants' rights did not exceed 400 inches, and to the use of water sufficient only for the proper irrigation of a quantity of lands, not exceeding the acreage between the ditch and the stream from which diverted.

8. Nearly all the witnesses place the quantity required for the proper irrigation of lands in that vicinity at one

inch per acre.   The number of acres irrigated by plain-
tiffs, by means of the water right acquired in 1883, is not
clear.   Plaintiffs appear content with mere statements
to the effect that the ditch carries from 600 to 700 inches,
that the land requires one inch to one and one half inches
per acre, and that it takes all the ditch can carry to
properly irrigate the land.   From this we are expected
to infer the acreage, etc., to say nothing of the fact that
the plat in evidence demonstrates the inaccuracy of the
inference, evidently intended, as to the acreage under the
ditch, this class of testimony only amounts (the facts
from which the conclusions are derived not being stated)
to opinion evidence.   *Gardner* v. *Wright*, 49 Or. 609, 635
(91 Pac. 286).

9. Nowhere is it disclosed that any experiments were
made to determine the quantity of water required, and
the evidence is very unsatisfactory as to the knowledge
of the witnesses, testifying upon the subject, as to what
constitutes an inch of water.   One witness gives it as his
opinion that it requires as high as 17 inches per acre
for the proper irrigation of some lands, stating: That
where only a few acres, anywhere from 1 to 50, are irri-
gated, the demands for the proper reclamation of the
land would be as high as 17 inches per acre; but that
the duty of water increases in proportion to the head
used; that where there are 50 acres and upwards the
amount required per acre decreases proportionately; and
that by the use of 50 inches or more in one head less
than one inch per acre would be sufficient.   That the
quantity required depends largely on the head of water
available is doubtless correct; but, in the case under
consideration, should each of the plaintiffs receive his
share, and all use the water at one time, under the allow-
ance here made, the proportion of each would satisfac-
torily irrigate all of the lands owned by them.   It is
obvious, however, that a flow of 17 inches of water per

acre is never required for the irrigation of any lands, even though it should be but one acre, unless in some exceptional localities, where the soil may contain so much gravel or be so porous as to make its use unprofitable for cultivation. Nor does it follow that, because this statement is undisputed by any other testimony, we must accept it as being accurate. As a rule the unchallenged statements of witnesses are accepted; but should testimony be given contradicting, for example, the laws of gravitation, such evidence could not well be accepted as true, even though unrebutted. The statement here criticised does not go to that extent; but its inaccuracy is equally obvious. No doubt, the witness thought his theory tenable. His sincerity, however, only serves to illustrate the general lack of knowledge, even among water users, concerning the quantity of water furnished by a constant flow of one inch, miner's measurement, and the corresponding unreliability of testimony of the character adduced on the subject, amounting merely to an opinion or guess, without any actual tests as to the quantity actually used and required.

10. One inch of water, under six-inch pressure, miner's measurement, is one fortieth of a second foot, and furnishes a flow of 675 gallons per hour, which in 30 days would furnish 1½ acre feet, or six acre feet of water for a four months' irrigation period. A flow of 17 inches therefore would cover an area, equal to one acre, to a depth of 25½ feet each month or 102 feet in depth (102 acre feet), during an irrigation season of four months. The absurdity of such a quantity, being essential to the proper irrigation of lands, is manifest. Four hundred inches of constant flow would cover an area equal to 440 acres, during a like period, 5½ feet in depth. The quantity allowed by the government for an irrigation season in similar localities and altitudes, with like soil, is usually about 1½ acre feet. In *Hough* v. *Porter*, 51 Or. 418

(95 Pac. 732: 98 Pac. 1083: 102 Pac. 728), the quantity allowed, under the evidence, was from one-third to two-third inches per acre, which is less than is here allowed. It is clear therefore than 10 second feet, or 400 inches, are ample for the irrigation of plaintiffs' lands under the ditch, and it is probable that even this quantity is not required at all times during the irrigation seasons.

11. When not so required, however, it becomes subject to use by others on the stream, in the order of their rights. *Gardner* v. *Wright,* 49 Or. 609, 637 (91 Pac. 286) ; *Williams* v. *Altnow,* 51 Or. 275, 303 (95 Pac. 200: 97 Pac. 539) ; *Hough* v. *Porter,* 51 Or. 318, 438 (95 Pac. 732: 98 Pac. 1083: 102 Pac. 728).

12. Another question presented for solution is: On what lands may the water be used by the plaintiffs under this appropriation? As stated, plaintiffs rely for their water rights on the diversion made through the Wham-Whited Upper ditch. This being true they are limited in their use, under this appropriation, to the lands under that ditch, which may be irrigated by water diverted either through that canal or other ditches under it; and, while not necessarily confined to the same specific tracts upon which the water has·heretofore been applied, they are restricted to acreage upon which the appropriation was perfected at the time of the inception of the water rights of the answering defendants, which did not exceed 440 acres. The same question was presented in the case of *Williams* v. *Altnow.* There, like the case under consideration, the plaintiffs were below the defendants. The court awarded plaintiffs 250 inches of water as a second right, but superior to all defendants except Altnow, and, prior to his right to the use of water from a tributary of Otis Creek, to all water exceeding 150 inches. The point here presented is not specifically discussed in the opinion in that case; but the decree entered upon the mandate, after specifying Altnow's rights, declares:

"That the respondents (plaintiffs) are next in right to the use of 250 inches of water from the waters of Otis Creek and tributaries, through their ditches, known as the 'Duncan ditch' and the 'Stewart ditch,' upon their said lands under said ditches as described in the findings herein."

13. A decree was entered by the trial court, awarding plaintiffs, as against the nonanswering defendants, 750 inches of water. Ordinarily a judgment or decree by default will not be disturbed; but, as we have heretofore held (*Hough* v. *Porter,* 51 Or. 318, 439: 95 Pac. 732: 98 Pac. 1083: 102 Pac. 728), water suits are in many respects *sui generis,* by reason of which courts are sometimes confronted with the dilemma of either exercising their discretion in matters of practice coming before them, or of making an exception to that well-known maxim, "equity will not suffer a right to be without a remedy." In this instance, however, it is not necessary to apply any new rules on the subject. Here the 750 inches were awarded plaintiffs, as against the defendants who did not answer, while the ditch, through which the right is asserted, will carry but 564 inches at most; and, further, not more than 400 inches can be applied to a beneficial use under the ditch. As before stated, the measure and limit to the use of water is determined by the quantity applied to a beneficial use. This necessarily limits plaintiffs in their claim against those not answering to 400 inches, placing all the defendants on the same footing, except that we are powerless to enter any decree affirmatively determining the rights of those not answering. The decree, with reference to the nonanswering defendants, will, accordingly, be modified by reducing the quantity awarded plaintiffs, as against them, to 400 inches.

14. Counsel for appellants insist that it was not shown that plaintiffs were injured by any interference on the

part of defendants, by reason of which, it is urged, the suit cannot be maintained. The briefs on file in *Seaweard* v. *Pacific Live Stock Co.*, 49 Or. 157 (88 Pac. 963), and *Williams* v. *Altnow*, 51 Or. 275 (95 Pac. 200: 97 Pac. 539), disclose that this defense was there presented and relied upon, but, as the conclusion announced in each of these cases indicate, was without avail. It may be regarded as well settled in this state that it is only necessary to the maintenance of suits of this character, either that it appear the defendants claim adversely to the moving party, or, if not asserting a hostile claim, that those made defendants are necessary to a complete determination of the controversy. Applying this rule here, this suit is maintainable, and each of the defendants are proper parties. Section 394, B. & C. Comp; *Jones* v. *Conn*, 39 Or. 30, 47 (64 Pac. 855: 65 Pac. 1068: 54 L. R. A. 630: 87 Am. St. Rep. 634) ; *Hough* v. *Porter*, 51 Or. 318, 372 ('95 Pac. 732: 98 Pac. 1083: 102 Pac. 728).

15. It is argued by counsel, appearing *amicus curiae*, that the learned trial court erred in adjudicating the relative rights of defendants as to each other, for the reason the record does not disclose that any issue was made, or attempted to be framed, between them. This point we deem well taken. Such would have been within the discretionary power of the court had all the parties, by its order, been brought in, but declined to appear or plead, and a determination of their relative interests found essential to a determination of the rights of those framing issues. *Hough* v. *Porter*, 51 Or. 318, 439, 441 (95 Pac. 732: 98 Pac. 1083: 102 Pac. 728). But the exercise of this discretion is not essential to a determination of the rights between plaintiffs and the answering defendants. The evidence adduced is also inadequate for that purpose.

The decree must therefore be modified by setting aside all that part respecting the relative rights of any of the

parties. We do not deem it necessary, however, to remand this cause for the purpose of trying out the matters here left unsettled, and will leave all unadjudicated points for determination in such proceeding, if any, as the parties interested may hereafter see fit to bring. The decree of the circuit court will also be modified by reducing the quantity awarded plaintiffs from 564 inches to 400 inches, to which, we hold, they are entitled as a first right, when needed, in the irrigation of their lands, or any portion thereof, situated under the Wham-Whited Upper ditch and west of the south fork of Burnt River. The decree as to costs will remain, except that no costs incurred after entry of decree for want of answer will be allowed against the nonanswering defendants; appellants to have their costs on appeal.          MODIFIED.