Argued March 6, affirmed June 11, 1929.

## STATE ex Rel. I. H. VAN WINKLE, Attorney General, et al., v. PEOPLES WEST COAST HYDRO-ELECTRIC CORPORATION.

(278 Pac. 583.)

For appellant there was a brief over the name of *Mr. I. H. Van Winkle*, Attorney General, with an oral

argument by *Mr. Willis S. Moore,* Assistant Attorney General.

For respondent there was a brief over the names of *Mr. David E. Lofgren* and *Mr. S. J. Graham,* with oral arguments by *Mr. Percy A. Cupper* and *Mr. J. O. Stearns, Jr.*

RAND, J.—This is a suit by the State of Oregon on relation of the Attorney General and the members of the State Fish Commission to enjoin the defendant from diverting the waters of Herman Creek. The state owns and operates a fish hatchery on Herman Creek below the intake of defendant's pipe-line for the propagation of salmon, and claims the waters of said stream for use in said hatchery. The defendant is a public utility and owns and operates a hydro-electric plant on the Columbia River in Hood River County and near the mouth of said stream. It operates its plant by water-power, the water being diverted from Herman Creek through a flume and pipe-line about 2,500 feet in length, which furnishes to defendant's plant a head of about 375 feet. The amount claimed and used is fifteen second-feet, which water so used is not returned to the channel of Herman Creek. The communities served by defendant with electric light and power generated at said plant are on both sides of the Columbia River in Oregon and Washington. Defendant and its predecessors in interest have been engaged in operating a generating plant by means of the waters so diverted from Herman Creek and in the sale of electric light and power for about fifteen years prior to the commencement of this suit. Commencing with the year 1915, that being the year when it was first required to do so, and

each and every year thereafter, the defendant and its predecessors in interest have, pursuant to Sections 5803 and 5804, Or. L., filed in the office of the State Engineer an annual statement and report of its appropriation and use of the waters of Herman Creek and have paid to the State of Oregon an annual license fee in accordance with the provisions of said sections.

Defendant bases its right to its appropriation from Herman Creek upon the following facts: On July 25, 1908, defendant's predecessor in interest, Goodwin A. Young, posted a notice on Herman Creek at the point where the water is now being diverted, claiming an appropriation of fifty second-feet for power purposes, and caused the same to be recorded within ten days thereafter. On October 31, 1908, Young posted another notice at the same point, claiming an appropriation for the same quantity of water and stating that the water was to be diverted from Herman Creek by a pipe-line, the general course of which was to be in a westerly direction from said head-gate, and stating that the place of intended use of the water was in the SW.¼ of the NW.¼ of section 8, township 2 north, range 8 east, W.M., which notice was likewise recorded on November 9, 1908. Owing to an irregularity in the lines of the government survey—the north line of section 9 being one-fourth mile farther north than the north line of section 8—Young, in his second notice, described the place of intended use as in section 8 when in fact he intended to describe the place of use as in the N.½ of the SE.¼ of section 5 in said township and range. Shortly thereafter and during the same year, Young made a survey of his proposed pipe-line, following the line of its present location, and during the follow-

ing spring he sought and obtained permission from the United States Forestry officials to extend the pipe-line for a short distance over the Herman Creek ranger station, and also in March or April of that year commenced the construction of a flume to divert the water, and he also purchased and acquired title to the land on which the present power plant is located. During the following year, he extended the flume to a point about 900 feet below said point of diversion and there constructed, either in 1911 or 1912, a small power plant and a sawmill and turned about fifteen second-feet of water out of Herman Creek into the flume and conducted it through the flume to said power plant and used it for the development of elec-tric power which in turn was used to operate the sawmill for the manufacture of lumber and ties and also to generate electric power for sale.

In addition thereto, he constructed a V-shaped flume from said sawmill down to a wagon-road below and turned water into said V-shaped flume to float and carry the lumber so manufactured. The water at that time not used in the V-flume was returned to Herman Creek. The section traversed by the pipe-line is on the brakes of the Columbia River and very precipitous and it was very expensive to construct the pipe-line over the divide from the point where the water was first used down to the place where the present plant is located and Young was short of funds. The lumber used in building the flume referred to had to be carried up a precipitous mountainside by man power, there being no road or trails that could be used for that purpose. During each year after the construction of the power plant and sawmill referred to, the water so appropriated was used to operate the same until the pipe-line and the present plant were

constructed and during each of said years construction work was carried on with reasonable diligence as the evidence clearly shows. While we were engaged in the World War, Young found it difficult to obtain labor for the construction of the pipe-line and the present plant where the water is now being used, but in 1918, or 1919, the date not being clear from the evidence, the present plant and pipe-line were completed and since that time the present plant has been operated by the water diverted from Herman Creek and before the completion of the present plant the appropriated water was used at the old plant without intermission between the two.

The state bases its claim to the use of the waters of Herman Creek upon the following facts: During the year 1914, the State Fish Commission commenced the construction of a hatchery on Herman Creek for the propagation of salmon. The hatchery was located upon leased lands which the state has since acquired by condemnation proceedings. Although the state made use of the waters of Herman Creek in the operation of its hatchery for the first time in 1915 and has continuously used the same since said time, it acquired no right to the water by appropriation because by an act of the legislative assembly, Chapter 36, Laws of 1915, now Sections 7113 and 7114, Or. L., the waters of certain streams flowing into the Columbia River, including Herman Creek, were withdrawn from appropriation and this prohibition was held to be applicable to the State Fish Commission in *State ex rel.* v. *Hawk*, 105 Or. 319 (208 Pac. 709, 209 Pac. 607). This bar of the statute against the State Fish Commission was withdrawn by Chapter 373, Laws of 1921, but no application was made by the State Fish Commission for a permit to appropriate such waters

until November 15, 1922, when a permit was granted to the State Fish Commission by the State Engineer to make such appropriation. Because of these facts, it was admitted upon the argument that the state had acquired no legal right by appropriation to the waters of Herman Creek until November 15, 1922. However, the state contends, (1) that because upon completion of the pipe-line the defendant failed to file a map of definite location as provided by the 1899 act, under which the notices were posted, such failure operated to defeat defendant's appropriations; (2) that defendant having used the water at a point where it was returned to Herman Creek until the completion of defendant's present plant either in 1918 or 1919, defendant's subsequent use of the water at a place where it does not return to Herman Creek constitutes a waste of the water and an injury to the state entitling it to an injunction against such use; (3) that defendant's failure to use the water at the place it is now being used for a period of ten years after the posting of the first notice constituted an abandonment of defendant's appropriation because of such delay in carrying out the original intention of Young to use it at the place where it is now being used; and (4) that the state is entitled to an injunction against defendant's use of the water because, so it contends, neither the notices of appropriation so posted and recorded nor its operations disclosed to the officers of the state any intention to divert the water from Herman Creek and use it at a place where it could not be returned to the channel of the creek until after the state had expended some $20,000 in the construction of the hatchery.

■ Defendant's right of appropriation was not defeated by its failure to file a map of definite location

upon completion of the pipe-line, although such failure might have the effect of preventing defendant's rights from relating back to the time when the notices were posted. Upon that point we express no opinion. The notices were posted and the first steps were taken to secure the appropriation before the enactment of the Water Code. The rights which defendant's predecessors in interest had acquired prior to the enactment of the Water Code were preserved by Section 5717, subdivision 7, Or. L. Prior to the enactment of the Water Code, a person desiring to appropriate water for a beneficial purpose had a choice of two methods. He could, without the posting or recording of any notice or claim, construct a ditch or other means to convey water and divert the water into such ditch and apply it to a beneficial use and when the water had been so diverted and used, the appropriation was perfected and the right related back to the time when work was first commenced, if reasonable diligence had been exercised in the prosecution of the work. Under such circumstances, the rule was "Although the appropriation is not deemed complete until the actual diversion or use of the water, still if such work be prosecuted with reasonable diligence, the right relates to the time when the first step is taken to secure it": 1 Niel on Water Rights (3 ed.), § 393, and authorities there cited; *Cole* v. *Logan,* 24 Or. 304 (33 Pac. 568); *Nevada Ditch Co.* v. *Bennett,* 30 Or. 59 (45 Pac. 472, 60 Am. St. Rep. 777); *Hough* v. *Porter,* 51 Or. 318 (95 Pac. 732, 98 Pac. 1083, 102 Pac. 728).

Prior to the enactment of the 1909 Water Code, the other method of appropriation was that provided by the Act of February 18, 1899 (Laws 1899, pp. 172–

180). That act provided that upon the posting and recording of a notice in writing, as provided in the act, and the filing of a map showing the general route of the ditch, the appropriator had six months from the date of the posting of the notice within which to commence the actual construction of his proposed ditch and, if work was so commenced and thereafter prosecuted with reasonable diligence until completion (*Re Determination of Water Rights of Hood River,* 114 Or. 112 (227 Pac. 1065), the other provisions of the act being complied with, his right to the use of the water appropriated, as provided in the act, related back to the time when the notice was posted. In the instant case defendant's predecessors in interest having made an actual diversion and application of the water to a beneficial use, the appropriation became perfected through such diversion and use of the water the same as if no notice had been filed or recorded, and the question of whether their right related to the time of the posting of the notice or to the time when construction work was actually commenced is of no importance here because the state is not claiming that it acquired any right between said dates and if the defendant is not entitled to claim under the notice, it is entitled to claim because of the actual diversion made and the application of the water to a beneficial use; hence, the failure to file a map of definite location did not have the effect of defeating defendant's right to the use of the water.

██ We find no merit in any of the other objections urged for this reason. It was admitted upon the argument here and in the court below that the State Fish Commission acquired no right to the waters of Herman Creek until November 15, 1922, and it is

admitted that defendant's pipe-line and power plant had been completely constructed and placed in operation and the water diverted and used for the operation of the same for three or four years prior to the time when the rights of the state attached. The state, therefore, was in no position to complain because of the change of place of use. Hence, whether defendant's diversion and use of the water at the first plant in itself alone constituted a valid and completed appropriation of the water and was followed by a change in the place of use, or whether such diversion and use at the temporary plant was only a preliminary step in making an appropriation which contemplated the use of the water at the present plant, the state, since it had no legal right to the water, is in no position to complain of such change in the place of use, if there was a change, or of any delay. While it is true that the law does not permit a change in the place of use of appropriated water which injuriously affects third parties, it is only parties having legal rights who are affected by the change who can complain: *Wimer* v. *Simmons,* 27 Or. 1 (39 Pac. 6, 50 Am. St. Rep. 685); *Nevada Ditch Co.* v. *Bennett, supra; Hough* v. *Porter, supra; Whited* v. *Cavin,* 55 Or. 98 (105 Pac. 396). But if the state were in a position to complain, we think that where water is sought to be appropriated to be used in a particular place for the purpose of generating power and, on account of great physical difficulties being encountered in constructing a pipe-line between the point of diversion and the place of intended use, the appropriator has a right, if he sees fit, to use the water to operate another plant temporarily erected for the generation of power by means of the appropriated water before reaching the place of ultimate

use and that, if reasonable diligence is exercised in carrying out the original intention of diverting the water and using it at the place intended, there is no abandonment of the appropriation by reason of its use at the temporary plant, and that the right to conduct the water to the place of its ultimate use relates back to the time when construction work was actually commenced. The physical difficulties encountered by defendant's predecessors in interest in the construction of the pipe-line were such as to require a large expenditure of money. The communities adjacent thereto contained but a small population and the demand for power at those places was very limited and hence the revenues derived from the sale of electric power in the beginning were small. Notwithstanding this, defendant's predecessors prosecuted the work with reasonable diligence and brought it to a completion in 1918 or 1919, and since that time they have operated their plant by use of this water without let or hindrance. It is only during the dry season of one or two years so far as the evidence shows that the hatchery has not had sufficient water for its operation to its fullest capacity and during those times of scarcity there was sufficient water available to operate the hatchery but not at all times to the extent desired. The injuries sustained by the hatchery for lack of water have been slight and transient. If, in this suit, the state could succeed in the accomplishment of the result sought, it would mean the scrapping of defendant's plant and the loss not only of its plant but the disruption of its business as well as great inconvenience to the communities now served by defendant. In view of the fact that the state acquired no legal right to the use of any of the waters of Herman Creek until after the defendant had com-

pleted its plant and diverted the water to the place of its present use for three years or more, the state is not entitled to equitable relief and is not in a position to complain upon any of the grounds for which it now contends.

For these reasons, the decrees of the lower court must be affirmed.                    AFFIRMED.

BROWN, J., did not participate in this opinion.