Argued July 9; affirmed September 15, 1931

CAMPBELL ET AL. *v.* WALKER ET AL.

(2 P. (2d) 912)

*J. C. Rutenic,* of Klamath Falls (Rutenic & Yaden, of Klamath Falls, on the brief), for appellants.

*Claude C. McColloch* and *Ralph W. Horan,* both of Klamath Falls (Manning, McColloch & Driscoll, of Klamath Falls, on the brief), for respondents.

CAMPBELL, J. On May 31, 1924, W. R. Campbell et al. commenced a suit against Luke E. Walker et al. in the circuit court for Klamath county, asking that an injunction issue against defendants restraining them from interfering with plaintiffs in the irrigation of their lands with water from the south fork of Sprague river, and calling for an adjudication of their rights. The court thereupon made an order referring the matter to the state engineer for adjudication. The engineer proceeded to determine and adjust the water rights of the respective parties, as well as of the other water users on Sprague river; heard the testimony offered; made a complete survey of the grounds; and prepared his report. He then notified all parties concerned of the times and places where said report would be open for public inspection.

Thereafter appellants herein filed certain exceptions to, and instituted contests of, certain findings in said report. These contests and exceptions were then heard by the circuit court, who after a consideration of the testimony and the law, entered a decree confirming the adjudication of the state engineer, with a few minor modifications. Before entering the decree of confirmation, the court made an order consolidating the matter of the adjudication by the state engineer with the suit instituted by plaintiff. From a portion of the decree confirming the adjudication, defendants take this appeal.

The only part of the decree before this court on this appeal is as to the dating given to certain lands belonging to respondents.

The assignments of error are as follows:

■ That the trial court erred in the decision of all said contests, in determining that the pasturing of cattle on, and the cutting of hay from, land that is overflowed in spring freshets, the water rising from the river and covering the land higher than itself, then receding in summer from evaporation and natural drainage, constitutes an appropriation of water sufficient to irrigate said land after drainage during the entire irrigating season.

■ That the court erred in deciding that a squatter on state land, without application to purchase made, has such an interest in the land that he could initiate appropriation of water for said land, and especially by merely grazing his cattle or cutting hay thereon.

■ That the court erred in holding that such a squatter, by selling his improvements without having made application to purchase from the state, transferred such a water right, so initiated, to one who later applied to the state for purchase of the land.

■ That the court erred in determining in its decree that the depasturing of cattle or cutting hay on such a swamp determines the priority of the right to the the use of the water, rather than the date of drainage of such swamp and application of water in irrigation thereafter.

■ That the court erred in decreeing that respondents Campbell and Connor have prior dating in their rights to use water from the south fork of Sprague river than the appellant on land that was formerly naturally irrigated by Fritz creek and Deming creek,

which water of said creek was not diverted away from said land until long after the appropriation of water of said south fork by appellants, as decreed by the court, and was so diverted away from the land of said Connor and Campbell by themselves and their predecessors in interest.

Respondents moved to dismiss the appeal on the ground that appellants had failed to serve the notice of appeal on other water users on the stream, parties to this adjudication, who were adverse to the appellants. This motion was heretofore tentatively overruled with permission to renew it at the hearing on the merits.

Appellants are owners of land situate further upstream than the lands owned by respondents which are irrigated from the water of the south fork of Sprague river. The circuit court gave them priority datings to their land in Sec. 6, T. 37 S., R. 15 E. of W. M. as of March 25, 1883, and to their lands in Sec. 36, T. 36 S., R. 14 E. of W. M. priority datings as of February 25, 1884. To these datings they took no exception, but did take exceptions to the datings given to the priority datings of the water rights of respondents' lands which had earlier datings than appellants' lands, and from that part of the decree, only, they appeal. That is, by their exception they claim that the dating given to respondents' lands should be subsequent to March 25, 1883, that being the date given to appellants. Any subsequent dating given to respondents' lands would not adversely affect any of the other users of the water. Therefore, none of the other users need be made a party to this appeal as they are not adverse parties.

The motion to dismiss is overruled.

## On the Merits

CAMPBELL, J. The datings complained of by appellants were given to lands of respondent W. R. Campbell situate in Secs. 26 and 36, T. 36 S., R. 14 E. of W. M.: To lands of respondent A. S. Conner situate in Secs. 21, 16, and 22 of the same township: to lands of respondent Mary H. Dixon in Sec. 28 of same township: to lands of respondent Louis Gerber in Sec. 27 of same township: to lands of respondent John R. Mc-Auliffe in Sec. 26 of same township: to lands of respondent G. W. Morgan in Sec. 20 of same township.

■ It appears from the evidence that the lands in question are commonly known as "swamp or overflowed land." The south fork of Sprague river floods the lands of respondents during the spring freshets, furnishing a sufficient supply of moisture to make the lands valuable as hay land and for pasturage. The early settlers on these lands, the predecessors in interest of respondents, cut hay on parts of it and other parts they depastured. The waters would rise over the land generally during the spring months, commencing usually in February or March of each year, with successive rising and falling until sometime in the month of June; no two seasons being exactly alike either as to the time or the height to which the peak of the rise obtained. The fertility of the soil, coupled with this natural irrigation, produced wild grasses in abundance, which when cut and cured made a good quality of hay. The method adopted for reaping the benefits of this natural irrigation was by cutting the natural wild grasses for hay as the waters receded. The haying season lasted from early in July until September and sometimes even as late as October, depending upon the amount of precipitation of moisture during each

season. In fact, haying was carried on until the river began rising in the fall of the year. In addition to the natural irrigation, crude attempts were made by the first settlers to supplement nature by opening drains and constructing dams to cause the waters to spread over a greater portion of their lands.

The statement of this assignment of error would indicate that the lands were stagnant swamp lands. These lands undoubtedly were of a swampy nature and are frequently referred to by witnesses as "the swamp." Webster defines swamp as "wet, spongy land; soft low ground saturated with water but not usually covered by it; marshy ground away from the seashore." In fact, each community in which this character of ground is found has its own local use of the word.

The evidence shows that the south fork of Sprague river has its source in the hills southeasterly of the lands under consideration and flows northwesterly some distance through a canyon and emerges on to a flat some distance upstream from the lands of respondents, where its rate of speed is considerably diminished. It enters Section 36, T. 36 S., R. 14 E. of W. M. near the southeast corner thereof and crosses the section diagonally and enters Section 26 of the same township at the southeast corner thereof. Before reaching Section 36, its banks become lower and less defined until it almost loses its identity as a stream, and this characteristic is accentuated as it crosses Section 26 where it divides into sloughs and spreads out to a greater extent. This condition continues as it flows down through, or adjacent to, the lands of respondents. The testimony of W. W. Finley,

who came to the valley in 1882, is to the effect that during the spring freshets the river backed over the land and drained off slowly as the waters receded.

"In them days there was a small part of 27 that never drained off, a small part." (Referring to Section 27, Township 36.)

To the same effect is the testimony of J. A. Parker, a witness for appellant, who visited the Sprague River valley during the winter seasons of '77, '78, '79 and '80 as a trapper, but was not present during the summer seasons until he finally settled in the country in 1886. In speaking of Section 26, Township 36, and the course of the south fork through that section, he said:

"Oh, it was divided into sloughs in 26. There wasn't much of a channel through 26. It was filled with mud and sand and spread out."

J. J. Owen, who came to the valley in 1879, testified that in May of that year the water covered considerable portions of Sections 26 and 36. F. O. Slade came to the valley in 1879, and sold his stock to W. W. Finley in the spring of 1882. Mrs. N. A. Finley, wife of W. W. Finley, Mike Parker, who came to the valley in 1880 with a survey party and Charles F. Nail testified to the same tenor and effect. Witness W. W. Finley testified that he built a dam, which has since been maintained, in the south fork of Sprague river in the summer of 1882 for the purpose of causing the water to spread over a greater portion of his lands. Many of the witnesses had no occasion to observe closely what was done on the lands in question through the summer months by the people who owned or worked the land. However, those that had an opportunity to observe all testified that hay was cut and the lands depastured, and that this condition existed on the lands of all the

respondents. The lands were not, as claimed by appellant, a stagnant swamp, but were rather overflow lands which the predecessors of respondents, at about the time fixed in the decree of the circuit court, took possession of and began to use the water for beneficial purposes.

The evidence shows that the lands of respondents under consideration are comparatively level and nearly on the same level as the bed of the south fork of Sprague river. The river as it flows through T. 36, 14 E. of W. M. has practically no banks. Any slight rise causes it to spread out over these lands. It divides into sloughs. The overflow does not return to the stream at the same point where it left it, but much farther downstream. These conditions are very similar to those surrounding Silvies river: *In re Silvies River*, 115 Or. 27 (237 P. 322).

■ Appreciating the difficulty of getting testimony of all the conditions that existed at the time the lands were first settled on, the trial court awarded the water rights as of the date shown by the evidence, upon which an honest effort was made to occupy or acquire title to the lands and to use both the lands and waters for beneficial purposes. In the very nature of things it was impossible for the early settlers to complete their irrigation plans immediately.

The trial court therefore applied the same process of reasoning to the claims of all the water users on this stream, and appears to have been largely guided by the intent and effort that was exhibited by these early settlers in appropriating nature's bounty. This rule they applied to appellants as well as to respondents: *Seaweard v. Pacific Livestock Co.*, 49 Or. 157 (88 P. 963).

■ "But a squatter upon public lands may, even by parol, transfer his claim and interest, whatever it may be in this respect, to another, and the rights of the subsequent purchaser and of his successors in interest, if asserted under the doctrine of prior appropriation, relate back to the date of the first appropriation by the person with whom there may be a privity of estate. It is well settled that the entryman need not necessarily have a complete title to the land in order to acquire a water right therefor." *Hough v. Porter*, 51 Or. 318 (at page 421) (95 P. 732, 98 P. 1083, 102 P. 728).

"A mere claim of right to the land supplemented by a diversion and appropriation of the water is sufficient to entitle him to convey to another such interests as he may have, whether such appropriator be a mere squatter, or lessee, or other person in possession." *Id. Seaweard v. Pacific Livestock Co.*, 49 Or. 157 (88 P. 963).

■ This assignment has been abandoned.

■ "As a general rule, to constitute a valid appropriation of water, three elements must exist: (1) an intent to apply it to a beneficial use, existing at the time or contemplated in the future; (2) a diversion from the natural channel by means of a ditch, canal or other structure; and (3) an application of it within a reasonable time to some useful industry.

In the present case it may be said, in regard to the first requirement to constitute a legal appropriation of water, that it is the present bona fide design or intention of applying it to some immediate beneficial use. * * * When the water is utilized and the appropriator reaps the fruits thereof, in the harvesting of hay, grain or depasturing the land irrigated or in some other way, of course such intent plainly appears. * * * With practically no artificial works for irrigation, thousands of acres are naturally watered. When will the date of appropriation be fixed in such cases? * * * When the proprietor of the land accepts the gift made by nature * * *." Re rights to waters of Silvies River, 115 Or. 27 (at pages 65 and 66) (237 P. 322).

■ This assignment of error has reference to the waters of Deming creek and Fritz creek, two streams tributary to the south fork of Sprague river. The appellants admit in their brief: ''Indeed these creeks flow into the south fork below appellants' land, and not any of their waters could be used on appelants' land.'' They contend, however, that if Campbell and Connor are given datings on the south fork of Sprague river below the confluence of these tributaries, then the dating would also extend to the tributaries, but that the circuit court fixed the datings on these creeks later than on the south fork. The record shows that the landowners who were using the waters of these creeks got together and agreed upon the priorities as between themselves. Priority is a relative term. It was of no particular concern to the users of the waters from these streams what the dating of the appropriation should be so long as the relative datings to which they had agreed should be maintained. Appellants entered into a stipulation regarding Deming creek; ''* * * that the rights of A. S. Connor, L. Gerber, and W. R. Campbell in and to the waters of Deming creek shall be first satisfied * * * irrespective of the dates of priority upon any stream to which said Deming creek may be tributary.''

The foregoing admissions and stipulation remove the consideration of the waters of these two creeks from the controversy before the court.

The trial court did not hold as the first assignment of error would seem to indicate. The trial court held that the evidence introduced at the hearing on each of the exceptions and contests was sufficient to support the adjudications in fixing the priority datings for the use of waters on the respective tracts of land belong-

ing to respondents. At no time did the trial court find or adjudge any of the lands of respondents, under consideration, to be a swamp.

The trial court did not hold, as assignment of error number 2 would seem to indicate, that a squatter on state lands under all circumstances can initiate a water right that he may transfer. The trial court held that, under the facts and circumstances of this case, such predecessors in interest of respondents, who did not have title yet initiated a water right on land they occupied, had a right to sell their improvements and water rights to one who later acquired title to the land: *Seaweard v. Pacific Livestock Company,* supra.

Each of these cases must be determined on its own peculiar facts and circumstances; the chief objective being to preserve the rights of the individual and at the same time conserve the use of the waters of the state.

Finding no error, the decree of the circuit court is affirmed without cost or disbursements to either party in this court.

BEAN, C. J., BROWN and BELT, JJ., concur.