# THE SUPREME COURT

OF

## OREGON.

## MAY TERM, 1891.

[Filed May 21, 1890.]

*WILLIAM H. SPEAKE ET AL. *v.* W. B. HAMIL-TON ET AL.

WATER—APPROPRIATION THEREOF ON PUBLIC LANDS OF THE UNITED STATES.— A person has the right to go upon the public lands of the United States and to appropriate the waters to the purposes of mining, milling, agriculture, or any other lawful purpose, and priority of appropriation gives priority of right, and the rights of riparian owners when they attach are subject to the rights thus acquired.

<div style="float:right">

| 21 | 3 |
| 42 | 80 |
| 21 | 3 |
| f48 | 337 |

</div>

Baker county: JAMES A. FEE, Judge.

Defendants appeal. First modified; afterwards affirmed on rehearing.

The complaint alleges that in the year 1877 the plaintiff and a grantor of the plaintiff, Mary H. Speake, appropriated sixty inches of the waters of Fox creek for mining, mechanical and agricultural purposes; that said appropriation was prior in time and right to all other appropriations, except to fifteen inches owned by the defendants Hamilton; that in the same year they dug a ditch of sufficient capacity to take and carry away said waters to the lands of the

* Omitted from previous volume.—[REPORTER.

plaintiff, and used the same for mining and agricultural purposes, and that the plaintiffs and their grantors have used said water ever since said date; that Mary H. Speake is the owner of five-eighths of said ditch and water, and that Wm. H. Speake is the owner of three-eighths of said ditch and water.

The answer denies all the allegations of the complaint, and then sets forth that the defendants W. H. and A. N. Hamilton are joint owners in certain farming lands in Baker county, Oregon, through which said Fox creek flows in a well-defined channel for about one-half mile; that said lands will produce no crops without irrigation; that the water of Fox creek is the only water supply to be had on said premises for either domestic or irrigating purposes; that the defendants Hamilton have growing on their said lands about three thousand fruit trees, and one hundred acres of said lands are under cultivation; that they and their grantors for eighteen years last past have been riparian owners of the stream, and have used the waters of Fox creek each year during all that time; that in the year 1875 the ditch claimed by the plaintiffs was dug to carry the waters from Fox creek to certain placer mines on Hibbard creek, known as the Hibbard creek or Speake and Campbell diggings, and said ditch was to take the surplus waters of Fox creek only; that said waters were taken by the plaintiffs and their predecessors in interest by and with the consent of defendants' grantors for mining purposes only; and that when said mine was worked out all the waters of said creek were to come back to the channel of said creek, and that at all times when the waters of said creek were not used at the mine they were to flow in the channel of said creek; that said mines have long since been worked out, and that all said water ought to flow in the channel of said creek; that shortly prior to the acts of trespass complained of by plaintiffs, said plaintiffs had obtained permission of the defendants to use for irrigating a part of the waters of the creek through the old mining ditch, and that under

cover and guise of such permission plaintiffs took all the water of the creek and totally deprived the defendants thereof, leaving their crops and domestic animals to suffer.

The defendants Hamilton then allege that they and the other defendants, their employés, went up to the point where the plaintiffs were wrongfully diverting the water and turned it back into the channel of the stream, and that at the time they so restored the water by the plaintiffs so wrongfully diverted, there were only about twenty inches all told in the creek, and that he needed it all for his use at his farm, and that said acts last named are the trespass complained of, and not otherwise.

The reply denies the new matter in the answer.

The court found that the plaintiffs were entitled to one-half the water in said creek, and the defendants Hamilton were entitled to the other half thereof, and entered a decree accordingly, from which decree the defendants Hamilton appeal.

*M. L. Olmsted,* for Appellants.

*J. J. Balleray,* for Respondents.

STRAHAN, J.—For all the purposes of this case, it may be assumed and I think the facts sufficiently appear from the record, that the land on Fox creek, in the year 1877, was all public lands of the United States; that Fox creek was a small stream carrying not more than one hundred and twenty inches of water upon an average; that some of the predecessors in interest of the appellants had diverted about twenty inches of water from said stream prior to 1877, and that the appellants have succeeded to whatever interest the said original appropriators had therein; that about the year 1877 the plaintiffs or their grantors appropriated sixty inches of water from said stream, which was first used for mining purposes, and afterwards for the purposes of irrigation, for agricultural and other purposes; that for the purposes of appropriating and utilizing said sixty inches of water, the plaintiffs or their predecessors in interest

dug a ditch of sufficient capacity to carry said water so appropriated to the plaintiffs' land, and that the grantors of the plaintiffs and plaintiffs have used said water without interruption, except the acts complained of herein, continuously since that time. I think it also sufficiently appears that at the time of the alleged interruption of the use of said water by the defendants, there were only about twenty inches of water flowing in said stream, all of which was by the plaintiffs' dam diverted into their said ditch, and that what the defendants did was to cut a trench around said dam of sufficient depth to allow all of said water then in said stream to flow back into and down the channel thereof. It also appears that after said water rights accrued, one of the plaintiffs and one of the defendants acquired homesteads under the laws of the United States on the respective places where they now reside, and that they have respectively perfected their titles thereto, and that the defendants' claim lies on both sides of said Fox creek, at a point below where the plaintiffs' ditch diverts said water. The defendants claim a right by appropriation and also as riparian owners. They also claim that the plaintiffs' can have no right to said water unless it be by some special usage or custom which must be pleaded and proven.

It is useless to discuss at this day the origin of the doctrine which prevails in all the Pacific states and territories in relation to the appropriation of water on the public lands of the United States for mining, milling, agricultural, and other lawful purposes. Its appropriation was first made for mining purposes, and was, step by step, extended until appropriations were made for any lawful uses to which the water might be applied. Vast properties were thus developed and grew up under this system until the courts were compelled to recognize and protect the rights thus acquired. It was claimed that the United States by acquiescence had given an implied license to make such appropriations, and recognizing the justice of this claim, congress passed the act of July 26, 1866. By

that act it was provided: "Whenever by priority of possession, rights to the use of water for mining, agricultural, manufacturing, or other purposes have vested and accrued, and the same are recognized and acknowledged by the local customs, laws, and decisions of courts, the possessors and owners of such vested rights shall be maintained and respected in the same; and the right of way for the construction of ditches and canals for the purposes herein specified is acknowledged and confirmed." (U. S. Rev. Stat. § 2339.) And by act of July 9, 1870, congress further provided: "All patents granted or preëmptions or homesteads allowed, shall be subject to any vested and accrued water rights, or rights to ditches and reservoirs used in connection with such water rights as may have been acquired under or recognized by the preceding section." (Rev. Stat. U. S. § 2340.)

In 1874 the case of *Atchison* v. *Peterson*, 20 Wall. 507, came before the supreme court of the United States. It involved the right to appropriate water for mining purposes, and the court declared that "by custom which has obtained among miners in the Pacific states and territories, where mining for the precious metals is had on the public lands of the United States, the first appropriator of mines, whether in placers, veins, or lodes, or of waters in the streams on such lands for mining purposes, is held to have a better right than others to work the mines or use the waters. The first appropriator who subjects the property to use, or takes the necessary steps for that purpose, is regarded, except as. against the government, as the source of title in all controversies relating to the property."

And in *Basey* v. *Gallagher*, 20 Wall. 670, the right to appropriate water for the purposes of irrigation was upheld. In the head-note to that case it is said: "In the Pacific states and territories, a right to the running waters on the public lands of the United States for the purposes of irrigation may be acquired by prior appropriation as against parties not having the title of the government. The right

exercised within reasonable limits, having reference to the condition of the country and the necessities of the community, is entitled to protection." And Mr. Justice FIELD, speaking for the court, said: "No distinction is made in those states and territories by the custom of miners and settlers, or by the courts, in the rights of the first appropriator from the use made of the water, if the use be a beneficial one."

A long array of authorities might be cited from all the Pacific states and territories, but these from the highest court in the land must suffice. But it is said by the appellant that this right has its foundation in some particular usage or custom which ought to be pleaded and proven. No doubt it had its origin in usage or custom among miners, but that usage has grown to be a part of the public history of the states and territories where it prevails, and is of such universal application that the courts must take notice of it, and they do that by recognizing and protecting the right. This I understand to be one of the ways in which this customary law may be shown. On this very point it is said in *Basey* v. *Gallagher, supra:* "It is very evident that congress intended, although the language used is not happy, to recognize as valid the customary law with respect to the use of water which had grown up among the occupants of the public lands under the peculiar necessities of their condition, and that law may be shown by evidence of the local customs, or by the legislation of the state or territory, or the decisions of the courts. The union of the three conditions in any particular case is not essential to the perfection of the right of priority." These rights have been constantly recognized in the courts of this state whenever they have been assailed or questioned. The principle upon which such rights depend was fully approved and sanctioned by this court in *Kaler* v. *Campbell,* 13 Or. 596.

The complaint admits that the appellants are entitled to fifteen inches before the plaintiffs are entitled to take any water from said stream, and that the appellants and those

under whom they claim acquired this right by appropriation prior in time to the plaintiffs. The decree will be framed in accordance with this admission. The plaintiffs are next entitled to sixty inches of water to be taken out of said stream and conveyed to their premises by means of the ditch mentioned in the complaint; and the appellants, their agents, and servants will be enjoined perpetually from interfering with the plaintiffs in the use of said water; and that the appellants' predecessors in interest had appropriated the residue of said water, to whose rights the appellants have succeeded. Of course what is here said only applies to the facts disclosed by this record and to the parties before the court, and could in no wise affect the rights of persons not parties to this suit.

The plaintiffs obstructed the appellants in the use of the fifteen inches of water to which they admit defendants had a prior right, and in that particular they were not without fault. It further appears that the rights of the parties had become seriously complicated, and perhaps could only be definitely ascertained and declared by means of a suit. Under all the circumstances, therefore, we have concluded that each party to this suit ought to pay one-half of all the costs thereof.

The decree of the court below will be modified in accordance with this opinion.

Affirmed on rehearing, May, 1891.