Argued 1 December; decided 29 December, 1902.

## BRITT v. REED.

[70 Pac. 1029.]

SUFFICIENCY OF EVIDENCE—WATERS.

1. The evidence in the record satisfactorily shows that the quantity of water diverted by defendant was an important infringement upon the rights of the plaintiffs.

IDEM.

2. The evidence is sufficient to show that plaintiffs' shortage of water was not due to imperfection in their ditch, but to the appropriation of water by defendant.

WATERS—RIGHTS BY RIPARIAN OWNERSHIP OR DIVERSION.

3. The appropriators of the waters of a stream running through public land acquire special property rights therein according to the dates of their appropriations respectively, whether as diverters or riparian owners, and may insist that the waters be applied accordingly.

INAUGURATION OF ADVERSE USE OF WATER.

4. A use of water, like a claim to land, is not adverse until it results in depriving some one else of the beneficial use of it, and a prescriptive right does not begin until there is an invasion of another's rights.

From Jackson: HENRY L. BENSON, Judge.

This is a suit by Peter Britt and others against C. D. Reed, to restrain the defendant from diverting or using any of the

*Reported also in 58 L. R. A. 816, with note.

waters of Jackson Creek, or either of its branches, when such use will interfere with plaintiffs' right to take and use five inches thereof through a ditch owned by them. The facts are that in 1853 the grantors and predecessors in interest of the plaintiffs constructed a ditch from a point on Jackson Creek, a short distance below where it forks, down to and upon the several tracts of land in the City of Jacksonville now owned and occupied by the respective plaintiffs, at which time five inches of water, or more, were diverted therefrom through such ditch, and used for domestic and irrigating purposes. This ditch has ever since been maintained and used by the plaintiffs and their predecessors in interest, and the water diverted and applied by them, affording the only water supply to their premises. In 1878 the defendant settled upon a forty-acre tract a short distance above the head of the plaintiffs' ditch, as a homestead, to which he acquired title by patent from the national government in March, 1883. The bed and banks of the creek for a space of five or six rods in width have long since been mined out down to the bed rock, from a point below the head of plaintiffs' ditch up to and above the land owned and occupied by the defendant, leaving loose tailings or mining debris therein to a depth of five or six feet. In the summer season there is but little water flowing in the stream, and that sinks down through the tailings and flows on the bed rock. About the year 1883 the plaintiffs constructed a covered bed rock drain, from four to six inches deep and twelve to fifteen inches wide, running from the head of their ditch diagonally across the bed of the stream, for the purpose of gathering and diverting the water thereto. Some time prior to 1880 one Poppewitz made a garden on the land now owned by the defendant, which he cultivated from year to year, using the water of Jackson Creek for its irrigation, until 1886, since which time the defendant has continued such cultivation and use of the water. Such use, however, was not known to the plaintiffs until the summer of 1899, when, being short of water, they made an examination of the stream for some distance above the head of their ditch, to ascertain the cause, and for the first time learned that the water was being

used by the defendant. In 1900 this suit was commenced to enjoin and restrain him from using the water to the detriment of the plaintiffs' rights, and, it resulting in a decree in their favor, the defendant appeals.                    AFFIRMED.

For appellant there was a brief and an oral argument by *Mr. Enoch B. Dufur.*

For respondent there was a brief and an oral argument by *Mr. William M. Colvig.*

MR. JUSTICE BEAN, after stating the facts, delivered the opinion of the court.

That the right of the plaintiffs to the use of five inches of the waters of Jackson Creek is prior in time and in right to that of the defendant is clearly shown by the testimony, and is substantially uncontroverted. The defendant contends, however, that the quantity of water used by him was so insignificant that it did not injuriously affect the plaintiffs, and that he had a right to use such water (1) as a riparian proprietor, and (2) by adverse possession or prescription.

1. The quantity of water used by the defendant is not shown by the record. It was probably small, but it appears from the testimony that at times during an unusually dry season there is not enough water in the stream to supply the plaintiffs' appropriation, and that the water used by the defendant at such times is a substantial injury to them. Judge Hanna, the husband and agent of one of the plaintiffs, testified that in the summer of 1899 the flow of water in the plaintiffs' ditch suddenly stopped, and that he and Emil Britt, the son of the plaintiff Britt, examined the stream from what is known as the "Beekman Ditch" to ascertain the cause, and discovered that the water was being used by the defendant. They immediately objected to such use, as a result of which it was discontinued, and the flow of water in plaintiffs' ditch perceptibly and materially increased,—so much so that, if it had continued during the season, they could have got along with the supply thus afforded. The plaintiff Britt and his son Emil both testified to the same state of facts. In the summer of 1900 the defendant

again diverted and used the water for irrigating his garden, when this suit was commenced, and a temporary injunction issued. Immediately thereafter the flow of water in the plaintiffs' ditch again increased to such an extent as to show beyond question that it was materially affected by the defendant's diversion. The evidence is therefore sufficient to show that the quantity of water diverted and used by the defendant was an important infringement upon the prior rights of the plaintiffs.

2. A contention is made that the plaintiffs' shortage of water was due to their imperfect ditch and headworks, and not to the acts of the defendant. The uncontradicted evidence shows that in 1883 or 1884 William Healey, the husband of one of the plaintiffs, constructed a covered bed rock drain, about six inches deep and from fifteen to eighteen inches wide, from the head of the plaintiffs' ditch diagonally up the stream, and across the entire bed thereof. This drain, cut out of the rock, had a stone and dirt wall built on the lower side, and served to catch and divert the water to the head of plaintiffs' ditch. Two or three years before the commencement of this suit, the plaintiffs had the drain opened and examined, when water was found flowing freely therein. There is therefore no ground for the contention on the testimony that there was any substantial defect in the ditch or drain. It is true, it did not gather up all the water, nor was it possible to do so. Judge Hanna, who stated that he had had considerable experience in mining and the use of water, testified that when a stream has been mined out, like Jackson Creek, the water will force itself into the seams of the bed rock and run some distance before it will come to the surface again, and that it is impossible to stop all the water that comes down so that it will not break out below; and Mr. Linn, a witness for the defendant, said that, from his experience, he deemed it impossible to save all the bed-rock water. But the evidence shows that it was to the interest of plaintiffs to save it, and that they actually did make every reasonable and diligent effort to do so; and the defendant, whose right is subsequent to theirs, can exact no more.

3. The defendant's contention that his right as a riparian proprietor to the use of the water is superior to the plaintiffs' rights as appropriators requires but a brief notice. It has been so often decided that it has become almost axiomatic that one who appropriates the waters of a stream running through public land acquires a special property therein, as against all persons acquiring rights subsequent in time, either as appropriators or as riparian proprietors, and may, as against such persons, insist that the waters shall be at all times subject to his use and enjoyment, to the extent of his original appropriation: *Kaler* v. *Campbell,* 13 Or. 596 (11 Pac. 301) ; *Tolman* v. *Casey,* 15 Or. 83 (13 Pac. 669) ; *Speake* v. *Hamilton,* 21 Or. 3 (26 Pac. 855) ; *Carson* v. *Hayes,* 39 Or. 97 (65 Pac. 814) ; *McCall* v. *Porter,* 42 Or. 49 (70 Pac. 820.) Whatever rights the defendant acquired as riparian proprietor by reason of his settlement on the stream were subordinate and subject to the prior rights of the plaintiffs as appropriators, and must be exercised in subordination thereto.

4. Nor is defendant's claim to the use of the water by adverse possession supported by the record, as there is no testimony showing or tending to show that the use thereof by him in any way injured or deprived the plaintiffs of any substantial right until 1899 ; and, as said by Mr. Justice MOORE, in *Bowman* v. *Bowman,* 35 Or. 279, 283 (57 Pac. 546, 547), "no adverse user (of water) can be initiated until the persons possessing the superior use are deprived of its benefits in such a substantial manner as to notify them that their rights are being invaded." And in *Carson* v. *Hayes,* 39 Or. 97 (65 Pac. 814), the court said: "The law is well established that no right to the use of water can be acquired by prescription unless there has been such an invasion of the rights of the parties against whom it is asserted as would have given them a cause of action therefor." See, also, *North Powder Mill. Co.* v. *Coughanour,* 34 Or. 9 (54 Pac. 223) ; *Boyce* v. *Cupper,* 37 Or. 256 (61 Pac. 642). The undisputed evidence shows that, while the defendant used the water for the purpose of irrigating his garden for more than ten years prior to the commencement of this suit,

such use did not substantially interfere with the rights of the plaintiffs, nor did they have any knowledge thereof, until a year before the suit was begun. Britt, one of the plaintiffs, testified that he first learned that the defendant was using the water about July 21, 1899, and that, just a few days before the complaint in this suit was filed, the defendant told him that at one time he thought he had a right to the water, but had ascertained that he had none, and would let it alone; that on several occasions when the water was scarce, and the question was being discussed between them, the defendant told him that the scarcity was caused by the Beekman mining ditch, about two miles above on the creek, but at no time said that he himself was using the water. Judge Hanna stated that he had no knowledge that defendant was using the water prior to 1899; and Emil Britt, a son of plaintiff Britt, and who had charge of his business, testified to the same thing. William Healey, the husband of the plaintiff Fredrika Healey, said that he never knew that defendant was using the water until after this suit was commenced, although he and his wife had lived on the property now owned by them since 1883 or 1884, and that he had occasion often to go up the stream, both on account of their own water rights and those of the city, in order to ascertain if the water was being diverted and used by unauthorized persons. The testimony of these witnesses is in no way contradicted, so that it must be taken as an established fact in the case that the plaintiffs' right to the water was not substantially interfered with by defendant's use a sufficient length of time before the commencement of the suit for such use to ripen into a right by adverse possession or prescription. The defendant's garden is situated on the bank of the creek, off of the public highway, and is not in a place where the ordinary traveler would observe it, or ascertain that water was being used thereon; and, moreover, the defendant testified that he generally used the water at night, although he sometimes used it during the day. The plaintiffs' lack of knowledge on the subject is probably accounted for by these facts. On the record, therefore, we conclude that the plaintiffs are entitled to a de-

cree perpetually enjoining and restraining the defendant from diverting any of the waters of Jackson Creek, or in any manner impeding or obstructing the flow thereof, whenever the same will substantially affect the quantity of water to which the plaintiffs are entitled.  The decree will be affirmed.

AFFIRMED.