Argued October 31, decided December 26, 1911.

## CAVINESS *v.* LA GRANDE IRR. CO.

[119 Pac. 731.]

APPEAL AND ERROR—DECISION—RELIEF AS BETWEEN CO-DEFENDANTS.

1. Where defendants, in a suit to establish water rights, who did not ·appeal from the decree, but were served with notices of appeal by other defendants, the award of the circuit court as to their claims must abide the decision on appeal.

WATERS—APPROPRIATION—CHARACTER OF APPROPRIATION.

2. An appropriation of water from a non-navigable stream contemplates a tenancy in severalty with all other appropriators.

WATERS—RIPARIAN RIGHTS—CHARACTER OF CORPORATION RIGHTS.

3. The use of water from a non-navigable stream by a riparian proprietor is essentially a tenancy in common with all other riparian proprietors on the same stream.

WATERS—RIPARIAN RIGHTS—EXTENT OF RIGHT TO WATER—DOMESTIC USES.

4. An upper riparian owner may take for domestic use, including water for his household and also for such animals as are essential to the proper sustenance of his family, so much of the water of a natural stream as may be necessary for that purpose, although none may be left for the lower riparian owners; such use being grounded on actual necessity.

WATERS—RIPARIAN RIGHTS—EXTENT—IRRIGATION PURPOSES.

5. Riparian use of water for irrigation purposes is limited by the ·condition that it must be so used as not to materially injure other riparian owners in their proportional use of the water of the stream for the irrigation of their riparian lands.

WATERS—APPROPRIATION—EXTENT OF USE.

6. An appropriator, subject to prior rights, may take all the water he can use, reasonably and without waste, for a beneficial project, although it may leave none for those claiming by subsequent right.

WATERS — NON-NAVIGABLE STREAM — APPROPRIATION AS WAIVER OF RIPARIAN RIGHTS.

7. A settler upon public lands which border upon a non-navigable ·stream may claim the use of water either as a riparian owner or as an .appropriator, but he cannot claim in both rights, since the exercise of ·one right is in substance the waiver of the other; the tenancy and charac-.teristics of the two rights being essentially different.

WATERS—RIPARIAN RIGHTS—PROCEEDINGS TO ESTABLISH—FUTURE USE.

8. In the very nature of things, a court cannot fix in advance by its ·decree the quantity of water which will be reasonable for the future use .of a' riparian proprietor claiming the right to water as such.

WATERS—WATER RIGHTS—IRRIGATION AND MINING—STATUTES.

9. Any use of the water of a natural stream for a beneficial purpose is free to one who has an opportunity to take it without infringing upon the property rights of another, the principle being one established by the exigencies of mining and agriculture, and Act Congress July 26, 1866, c. 262, 14 Stat. 253 (U. S. Comp. St. 1901, p. 1437), and Act Congress March 3, 1877, c. 108, 19 Stat. 377, known as the "desert land act," are declaratory of this law.

WATERS—APPROPRIATION—PERSONS ENTITLED TO APPROPRIATE—CONSENT
OF RIPARIAN OWNER.

10. A non-riparian appropriator, provided he has the lawful right of access to a natural stream, has a right to the use and diversion of water similar to that of a riparian user ; the essential condition of appropriation on public lands being the consent or acquiescence of the general government as the then riparian owner.

WATERS—ACTION TO ESTABLISH APPROPRIATION.

11. Where the pleadings showed that the plaintiff and one of the defendants in an action to establish water rights and to enjoin diversion by upper riparian users were riparian owners claiming as appropriators, and that the other defendants owned no lands, either riparian or away from the river, but merely conveyed water to such lands, the parties were before the court in the character of appropriators and not as riparian owners.

WATERS—APPROPRIATION—PRIORITIES.

12. One whose appropriation of water is prior in time is superior in right to the extent of his appropriation.

WATERS—APPROPRIATION—ACTION—PARTIES.

13. A corporation, which is organized merely to facilitate distribution of water among individual appropriators, though they do not surrender their rights to it, is yet in such a privity of estate with them as to enable it to defend in their behalf in litigation affecting their rights to the use of the water.

CORPORATIONS—POWERS—ARTICLES OF INCORPORATION.

14. The powers of a corporation are defined and limited by its articles, and, as against a stranger, it cannot go beyond them.

WATERS — APPROPRIATION — PRIORITIES — CORPORATIONS — INDEPENDENT
CLAIMS OR CLAIMS ANCILLARY TO STOCKHOLDERS.

15. The charter of a corporation, defendant in an action to establish a right of appropriation and to enjoin a diversion of water, showed that it was engaged in the "appropriation of waters of the Grand Ronde River by a ditch or canal, * * said water to be used for irrigation and such other purposes as may be deemed expedient and profitable by said corporation." Another corporation defendant was chartered to take 5,000 inches of water from the river by canals or ditches for irrigation, and another was chartered to construct, maintain, and operate irrigating ditches, to buy, sell, or rent and irrigate real estate, but none of the corporations showed any transfer to themselves, either directly or by

*mesne* conveyances, from any original settler of any water right or real estate to which such a right was appurtenant. *Held,* that the charters did not show any ancillary claims or privity with individual appropriators whose water rights the corporations had organized to facilitate and distribute, but the character of independent appropriators, and that their rights and priorities would be determined as of the dates of their incorporation.

WATERS—APPROPRIATION—FORFEITURE OR ESTOPPEL.

16. Plaintiff, in an action to establish a right of appropriation and to enjoin diversion by upper riparian users, had formerly been president and manager of one of the defendant corporations and had enlarged that company's ditch, but such additional use did not sensibly diminish plaintiff's own prior appropriation. *Held* that, as no hostile claim was initiated by the subsequent diversion, plaintiff was not thereby estopped to complain of diversions by defendants.

WATERS—APPROPRIATION—ACTION TO ESTABLISH RIGHTS.

17. In an action by a prior appropriator to establish his right and to enjoin private corporations from a diversion of water above his land, the circuit court has no power to adjudicate the rights of individual stockholders in the defendant corporations, since they were not parties to the suit, and their individual rights were not involved in the issues.

WATERS—APPROPRIATION—ACTION—DECREE—RELIEF BETWEEN DEFENDANTS.

18. Where defendants, in an action to establish a right of appropriation and to enjoin a diversion, raise no issue between themselves, the court cannot properly make a decree affecting the rights of defendants as to each other.

WATERS—APPROPRIATION—QUANTITY OF WATER.

19. Petition, in an action to establish a right to an appropriation, alleging that plaintiff was entitled to "five hundred cubic inches of water, miner's measurement, under six inches' pressure," is sufficiently definite as to the quantity claimed, since, by rejecting the word "cubic" as surplusage, the meaning is plain.

WATERS—APPROPRIATION—CONTINUITY OF APPROPRIATION.

20. Plaintiff, in an action to establish a right of appropriation and to enjoin diversions, showed that he had appropriated in 1865 at least 265 inches of water, miner's measurement, under a 6-inch pressure, and, though not using every week or month in the same quantity or in the same place, had generally used the whole amount. *Held,* that as one appropriating water is within his rights, if he diligently does something useful with it, plaintiff's appropriation had been continuous.

WATERS—APPROPRIATION—ACTION—DECREE.

21. Where plaintiff, in an action to protect an appropriation of water and to enjoin diversions from above his point of use, has shown a prior appropriation of a certain quantity, and defendants have shown only subsequent attempts at appropriations, plaintiff is entitled to a decree establishing the appropriation shown and perpetually enjoining the defendants from interfering therewith.

From Union:   HENRY J. BEAN, Judge.

Statement by MR. JUSTICE BURNETT.

This is a suit by J. L. Caviness, against the La Grande Irrigation Co., the Oro Dell Canal Co., the Irrigation Canal Co., the May Park Water Co., the May Park Water Ditch Co., the Nessly Ditch Co., the L. Oldenburg, A. L. Richardson and J. J. Nessly Ditch Co., the City of La Grande, J. B. Stoddard, L. C. Pennell and J. S. Chandler.

The Grande Ronde River, where involved in this suit, is a nonnavigable stream flowing from the west in a general easterly course through the valley of the same name. Of all the parties to the suit the plaintiff owns lands farthest down stream. The record does not disclose any riparian proprietor or appropriator of water below him. Asserting that he is the owner in fee simple and in possession of certain lands described in his complaint, through which the river runs in its ancient course now and from time immemorial and upon which for more than forty years he has resided and farmed for crops of various grains, grasses, alfalfa, sugar beets, garden products, orchard trees, and fruits, on December 22, 1906, he filed his amended complaint in this suit to enjoin the defendants from taking water out of the stream above him to the material diminution of his appropriation thereof alleged to have been made by him in June, 1865. The defendants include the city of La Grande, a municipal corporation organized and existing under an act of the Legislative Assembly of Oregon, seven private corporations here named and admitted by plaintiff to have been incorporated at dates as follows, to wit:   The La Grande Irrigation Company, May 19, 1903; the Oro Dell Canal Company, February 19, 1872; the Irrigation Canal Company, October 4, 1883; the May Park Water Company, January 15, 1902; the May Park Water Ditch Company,

May 10, 1902; The Nessly Ditch Company, February 28, 1898; and the L. Oldenburg, A. L. Richardson and J. J. Nessly Ditch Company, September ——, 1897, besides the individually named persons, J. B. Stoddard, L. C. Pennell, J. S. Chandler, and N. K. West. It is stated in the amended complaint that the lands of plaintiff therein described are naturally arid, but when properly irrigated produce large and remunerative crops of the kinds mentioned. A similar allegation appears in each answer respecting the lands mentioned in such answer, and the testimony sustains the truth of the statement wherever it appears in any of the pleadings. The plaintiff further avers that during the month of June, 1865, he went upon the river at a point particularly described and adjacent to his land, and, to use the language of his pleading, "appropriated 500 cubic inches, miner's measurement, under six-inch pressure of the waters of said Grande Ronde River, and, while the same was unappropriated by others, diverted said quantity and appropriation therefrom, by means of dams, ditches, and other means, to and upon his said premises and lands so occupied by him, for domestic, stock, and irrigation purposes, and has ever since said date openly, notoriously, adversely, and under claim of right and title so maintained said appropriation and diversion for the beneficial uses aforesaid." The plaintiff further avers, substantially, that although, when not interfered with, the river formerly and naturally flowed through and past his lands at the rate of 20,000 inches, miner's measurement, under 6-inch pressure, of late years during July, August, and September the stream has become so depleted in volume that even when undisturbed by upstream diversions it flows through his land at no greater rate than 5,000 inches, measured as above stated, and still during those months of each year he needs and requires for the

purposes mentioned not less than the quantity of water originally appropriated. He then charges that for four years past all the defendants except the La Grande Irrigation Company and the natural persons named, and during the irrigating season of 1906 all the defendants without exception, by means of dams, pumps, ditches, and other appliances named, have so diverted the water of the river at points above him without returning it and allowing it to flow to his point of diversion that he is deprived of water under his appropriation to such an extent as to injure and dry up his crops, inflicting upon him great pecuniary loss, and that they threaten to, and unless restrained by the court's decree will, continue that course of conduct all to his irreparable damage. He prays for such a decree and that his title to his alleged appropriation be established and quieted.

During the hearing before the referee appointed to take and report the testimony, it was agreed that the suit should be dismissed as to N. K. West. Among the orders appearing in the record is one sustaining demurrers of plaintiff to answers of L. C. Pennell and J. S. Chandler; but neither of such answers or any amended answer on behalf of either Pennell or Chandler appears in the record before us. No answer of the La Grande Irrigation Company has been sent to this court, although considerable testimony on behalf of it and Pennell and Chandler has been taken and reported. As pruned by motions and demurrers, the rulings of the court upon which are not questioned on appeal, the answers of the appealing defendant corporations are in legal effort fashioned after the same pattern. Each of such answers, after traversing the allegations of the amended complaint, alleges the purposes and objects of the corporate organization to be "the management and control and the conducting of the business of diverting waters from the Grande Ronde

River and conducting and carrying the same by means of dams, flumes and ditches to the lands owned and occupied by its stockholders hereinafter more particularly described, and dividing and distributing the same to its stockholders in certain proportions controlled by its directors in accordance with its rules and orders for irrigation purposes, stock water, and domestic use upon their lands." Each of such answers further states, in substance, that its stockholders and their predecessors in interest settled on the lands now owned and cultivated by the stockholders in 1862-1864 and afterwards acquired title thereto from the general government under its public land laws, and then goes on to state that the stockholders of the defendant answering and their predecessors in interest, those of the Nessly Ditch Company in 1862 to 1865, of the Irrigation Canal Company and May Park Water Ditch Company in 1864, and of the Oro Dell Canal Company in 1870, by means of dams, diverted water from the river at various points and conducted and used it upon their lands for stock water and domestic and irrigation needs so long as the dams and ditches were kept up for that purpose, and afterwards they jointly built a dam in the river at a place specified so as to make one point of diversion serve them all, built a headgate, connected therewith a ditch running to said lands, and diverted through the same a specified number of inches of water, miner's measurement, under six-inch pressure, "since which time the said stockholders of this defendant and their predecessors in interest have used said dam and ditch as their exclusive and only diversion of the waters of said stream for use upon their lands." These answers further assert that since the building of the one dam and ditch for all in each instance the defendant and its stockholders and their predecessors in interest openly, notoriously, adversely, and under claim of right as

against the plaintiff and the whole world have continued for more than 10 years prior to the commencement of this suit the same diversion of water; the whole thereof being necessary to the cultivation of those lands. It then sets out in detail the name of each of its stockholders, the number of shares of capital stock, and the acreage of land owned by each and the kind of crops grown thereon. Its prayer is that the plaintiff's complaint be dismissed and that its own right as stated be quieted and established as against all other parties to the suit.

The following allegation appears in each answer of the corporation defendants appealing except in the answer of the Nessly Ditch Company:

"That all the waters diverted as herein alleged from the Grande Ronde River either by riparian or nonriparian appropriators were open public and unappropriated waters of said stream, and such appropriation was made by and with the knowledge and consent of riparian owners of land upon said stream at the point of diversion and at all points on said stream between said point of diversion and below the alleged riparian property of the plaintiff."

The answer of J. B. Stoddard and the L. Oldenburg, A. L. Richardson & J. J. Nessly Ditch Company including the first further and separate answer is like that of the Oro Dell Canal Company, except that the Oldenburg, Richardson & Nessly Ditch Company disclaims any interest in the ditch or water used by Stoddard. Stoddard also alleges that for more than 10 years last past during irrigating seasons he has continuously used 100 inches of water, miner's measurement, openly, notoriously, exclusively, adversely, and under claim of right as against all the world including plaintiff, and that none of the water so used was ever returned to the river, of all of which plaintiff had full knowledge, by reason whereof defendant Stoddard avers he is the owner of 100 inches

Sig. 14

of water. The reply to the answer of Stoddard denies
the new matter thereof and alleges that the Oldenburg,
Richardson & Nessly Ditch Company abandoned its
appropriation and diversion about 1905; that Stoddard
did not succeed to its rights; but that, on the contrary,
he claims to have appropriated water directly from the
river within two years last past by reason of which,
operating with the diversions of the other defendants,
the plaintiff has been deprived of the use of water accord-
ing to his rights, the same being the injury of which
he complains. The new matter in the answer of the
other appealing defendants was traversed by the replies.
The May Park Water Company answered denying that
it had diverted any water in diminution of the alleged
appropriation of the plaintiff, but otherwise admitted all
the allegations of the amended complaint. This
defendant, May Park Water Company, also filed a cross-
petition against its codefendants, but not against the
plaintiff, which is in substance the same as the new
matter in the answers of the appealing defendants to
the amended complaint. The essence of its prayer was
that its right to an appropriation of water amounting
to 500 inches, miner's measurement, under a 6-inch
pressure, be declared paramount since January 15, 1902,
to the appropriation of the other defendants in excess
of certain quantities much less in each case than they
respectively claimed. No summons or order of court
requiring the other defendants to answer this cross-
petition appears in the record. It was answered, how-
ever, by general denials on behalf of Oro Dell Canal Com-
pany, May Park Water Ditch Company, and J. B. Stod-
dard. In addition to his denials, Stoddard alleged in
answer to the cross-petition practically the same new
matter which appears in his answer to the amended com-
plaint, but no reply to it appears in the record. The

remaining defendants made no answer to the cross-petition.

It is here set down, in passing, that in each answer of the appealing defendants to the amended complaint there is a statement that the new matter is alleged as a counter-claim for affirmative relief, and the settlement of the right of the defendant making the answer as to the water of the river against the claim of the plaintiff as well as against the adverse claims of the several defendants and to quiet the title of the defendant and its stockholders to the water appropriated by it. In none of such answers, however, is there any charge made that any other defendant has done any act interfering with or diminishing the appropriation claimed by the answering defendant. No order of the court or summons requiring the other defendants to plead to the new matter in such answers appears in the record. In brief, no issue is raised among the defendants except those predicted upon the cross-petition of the May Park Water Company and the answers to the same as hereinbefore noted. The circuit court found in substance that the plaintiff had made a valid appropriation of 265 inches of water out of the Grande Ronde River, miner's measurement, under 6-inch pressure, prior to any and all the defendants or any of their stockholders or predecessors and proceeded in detail to ascertain and fix the amount and order of priority not only of the claim of each defendant, both individual and corporate, but also of each stockholder in each private corporation defendant, and passed a decree accordingly, with costs and disbursements proportionately adjusted among the parties plaintiff and defendant. The Oro Dell Canal Company, May Park Water Ditch Company, Nessly Ditch Company, and J. B. Stoddard severally appealed from this decree, and each appealing defendant served its notice of appeal on every other party to the suit.                                    AFFIRMED.

For appellants there was a brief over the names of *Messrs. Cochran & Cochran, Messrs. Crawford & Eakin, Mr. Francis S. Ivanhoe and Mr. Eugene Ashwill,* with oral arguments by *Mr. George Cochran* and *Mr. Thomas H. Crawford.*

For respondent there was a brief with an oral argument by *Mr. Charles H. Finn.*

MR. JUSTICE BURNETT delivered the opinion of the court.

1. We have before us, as active parties on this appeal, the plaintiff and the defendants last above named. The other defendants, seemingly satisfied with the decision of the circuit court, have not questioned it here, but, having been warned by the notices of appeal served upon them to defend in this court the award of the court below respecting their claims, they must abide the decision on appeal.

2, 3. It is plain that, although the plaintiff's land borders on the river, he is maintaining his suit as an appropriator, and not as a riparian proprietor. One of the distinctions between appropriation of water and use by a riparian proprietor is that the former contemplates tenancy in severalty, while the latter is essentially a tenancy in common with all other riparian proprietors on the same stream.

4. For domestic use, including water, not only for his household, but also for such animals as are essential for the proper sustenance of his family, the upper riparian owner may take so much of the water of a natural stream as may be necessary for that purpose, although none may be left for the lower riparian owners.

5. So far the use is grounded on actual necessity. But irrigation is not so essentially a vital requirement, and riparian use for that purpose is limited at all times by the condition that it must be so exercised as not to materially injure the rights of other riparian owners in

the proportional use of the water of the same stream for the irrigation of their riparian lands.

6. On the other hand, an appropriator, subject to rights in existence at the time his appropriation is made, may take all the water he can use reasonably and without waste for a beneficial project, although it may be the lion's share and none may be left for those who come afterwards. In other words, a riparian owner, using water in that capacity, is in a sense always a tenant in common with other riparian owners on the same stream whose rights, at least for irrigation, he is bound not materially to injure by his riparian use of the water. The appropriator, however, is always a tenant in severalty owing no duty or respect to those endeavoring to use the water by title subsequent to his own.

7. It is the established doctrine in this State that a settler upon public lands, which border upon a non-navigable stream, may claim the use of water, either as a riparian owner or as an appropriator, but he cannot do both. The exercise of one right is in substance a waiver of the other. *Low* v. *Schaffer,* 24 Or. 239 (33 Pac. 678) ; *North Powder Milling Co.* v. *Coughanour,* 34 Or. 9 (54 Pac. 223) ; *Brown* v. *Baker,* 39 Or. 66 (65 Pac. 799: 66 Pac. 193) ; *Davis* v. *Chamberlain,* 51 Or. 304 (98 Pac. 154). A reason for this is that one cannot at the same time hold title to the same thing both as a tenant in common and in severalty. Applying these principles to the complaint, we observe that the effort of the plaintiff is to have a fixed quantity of water segregated from the whole amount flowing in the river past his land and appropriated to his exclusive behest, thus destroying one of the essential characteristics of riparian user considered as a tenancy in common.

8. In the very nature of things, a court cannot fix in advance by its decree what quantity of water will be reasonable in the future for the use of a riparian

proprietor claiming the duty of water in that character. This conclusion is a necessary corollary to the case of *Jones* v. *Conn,* 39 Or. 30 (64 Pac. 855: 65 Pac. 1068: 54 L. R. A. 630: 87 Am. St. Rep. 634). The essence of the controversy between the parties there, both of whom claimed as riparian proprietors, was whether the land on which the defendant was using the water was in fact riparian. The defendant, however, thinking to have settled the amount of water to which he was entitled as a riparian owner in the future, asked the court to decree to him the exclusive use of 2,675 inches of water regardless of the effect it might have on other proprietors. This court declined to grant him such relief claiming, as he did, as a riparian owner merely, but, on the contrary, granted an injunction against him to prevent him from acquiring the use of a fixed amount by prescription. The reason is that among riparian owners the contingencies of the future are so many and varied, respecting the amount of rain or snow fall, the heat or humidity of summer, the alternation of crops, and the like, that it is quite impracticable, if not impossible, to determine in advance the question of the duty of water for each riparian owner. Besides, a decree of that kind would be a virtual partition of the water from an estate in common to one in severalty, although there would be no rule whereby the estate of any single owner could be determined, owing to the unknown factors already noticed.

Claiming then, as he does, from the month of June, 1865, the right to use a fixed quantity of water upon his land without regard to its duty to others, the plaintiff assumes the character of an appropriator in this litigation and must be held to have waived his rights as a riparian proprietor, at least for the purposes of this suit, although the river in its natural course washes his land. The same reasoning applies to the answer of the defendant, J. B. Stoddard, and classes him also as an

appropriator, although the land he owns abuts upon the natural channel of the river, for he claims the right to the exclusive use of 100 inches of water because, as he alleges, his predecessors diverted that amount of water upon that land in 1862. In legal effect, his affirmative answer makes him assume an attitude in the case similar to that of the plaintiff, viz., that of an appropriator. True enough he says that he requires that amount of water in the conduct of what he styles intensive farming, which is well enough to say as an appropriator, for even such a user of water is limited to what is reasonably necessary in the prosecution of a beneficial enterprise. His needs, however, furnish no standard of adjudication among riparian users unless the needs of others in the like situation are also taken into the account, and this feature is entirely wanting in his answer. The fact that one owns land bordering upon a stream does not inevitably confine him to use of the water merely as a riparian owner, neither does it prevent him from establishing his point of diversion on his own land.

9. Primarily, any use of the water of a natural stream for a beneficial purpose is free to him who has an opportunity to take it without infringing upon the property rights of another. At least on the Pacific Slope, the exigencies of mining and agriculture have established this principle since the earliest times. The general government acquiesced in its application since the first settlements under the American regime, and by the Act of Congress of July 26, 1866, c. 262, 14 Stat. 253 (U. S. Comp. St. 1901, p. 1437), and in the Act of March 3, 1877, c. 108, 19 Stat. 377, commonly known as the "desert land act," has enunciated the doctrine in statutory form.

10. Concerning the mere diversion and use of water there is no difference between a nonriparian appropriator and a riparian user, provided the former has a lawful right of access for that purpose to the stream from which

the diversion is made. The essential condition of appropriation in the first place on public lands was the consent or acquiescence of the then riparian owner, the general government. The reason of the rule is not changed by the fact that the riparian owner is a private person provided the appropriator has his consent, or, what is equivalent, that the appropriator and the riparian owner are one and the same person. The deduction then is that if any one can lawfully gain access for that purpose to a nonnavigable stream, and water is there not subject to use by another, such a one may appropriate it for his own use. That a riparian owner may appropriate water, his point of diversion being on his own land, is taught by *Brown* v. *Baker,* 39 Or. 66 (65 Pac. 799: 66 Pac. 193) ; *Morgan* v. *Shaw,* 47 Or. 333 (83 Pac. 534).

11. The plaintiff and the defendant Stoddard, although they are both riparian owners, are entitled to waive their rights as such and to claim as appropriators and are authorized to so frame their pleadings. The corporate appellants must perforce claim only as appropriators, for they do not profess to own any lands, either riparian or away from the river, and are avowedly conveying water to lands that are not now riparian and were never such even in the hands of the original grantees of the government. It follows that the plaintiff and these defendants appealing are before us in the character of appropriators, and not as riparian owners, and as such we must consider them.

12. The question is consequently reduced to one of priorities in the first instance, for the fundamental principle of appropriation of water, as distinguished from riparian use, is that he who is prior in time is superior in right to the extent of his appropriation. *Speake* v. *Hamilton,* 21 Or. 3 (26 Pac. 855) ; *Britt* v. *Reed,* 42 Or. 76 (70 Pac. 1029).

It is necessary to this phase of the question to examine the proofs offered by the corporate appellants in connection with their traversed allegation respecting their corporate character which they propound as the scope of their authority in the premises. · This allegation, common to all their answers in the nature of a cross-bill against the plaintiff, advances the theory that the corporate appellants are mere holding concerns sustaining only an ancillary or administrative relation to the successors of the original appropriators of water above the plaintiff's land. It was evidently framed for the purpose of enabling the corporate appellants to trace their alleged title by appropriation back to the original settlers and to prescribe under their acts in the use of the water.

13. The doctrine has been laid down by this court, in *Oregon Construction Co.* v. *Allen Ditch Co.*, 41 Or. 209 (69 Pac. 455: 93 Am. St. Rep. 701), that, where individual appropriators do not surrender their rights to a corporation which is organized merely to facilitate distribution of the water among them, there exists such a privity of estate as to enable it to defend in their behalf in litigation affecting their rights to the use of the water. The reason for this holding is found by analogy in the provision of our statute allowing a trustee of an express trust to sue without joining with him his *cestui que trust.* Section 29, L. O. L.

14. But this does not dispense with the requirements that, if such are to be the objects and purposes of the company, they should be specified in their articles of incorporation. The powers of a corporation are defined and limited by its articles. Especially as against a stranger, it cannot go beyond them. *Oregon Railroad & Navigation Co.* v. *Oregonian Ry. Co.*, 130 U. S. 1 (9 Sup. Ct. 409: 32 L. Ed. 837) ; *State* v. *Portland Gen. Elec. Co.*, 52 Or. 502 (95 Pac. 722: 98 Pac. 160).

15. The articles of the Oro Dell Canal Company show
that the business in which it proposed to engage was
"the appropriation of the waters of the Grande Ronde
River by a ditch or canal," which is described in general
terms, "said water to be used for irrigation and such
other purposes as may be deemed expedient and profitable
by said corporation." The Irrigation Canal Company
was incorporated by articles which declare that "the
object of said company and the enterprise in which it
purposes to engage is the taking of 5,000 inches of water
out of Grande Ronde River in Union County, Oregon, by
means of a canal or ditches for the purpose of irrigation."
The Nessly Ditch Company declares that: "The purpose
for which said corporation is formed and the business in
which it proposes to engage is to construct, maintain and
operate irrigating ditches; to buy, sell or rent real estate;
to irrigate the same at any place within the State of
Oregon, or to do any thing or act necessary to carry out
the purposes and objects of this corporation." The
articles of incorporation of the May Park Water Ditch
Company, are not in evidence, and hence it is without
proof of its controverted allegation concerning its cor-
porate powers. These articles above quoted do not prove
the character in which the corporate appellants appear
on the record. They pose substantially as trustees or
holding concerns; but their charters show them to be
independent institutions operating in their own rights.
If they had organized with the intention of usurping the
possession of private ditch owners, their articles need not
have been stronger. They certainly do not indicate any
ancillary relation to those who took out water for private
use in the early days in that country. As far as their
characters are disclosed by the evidence, they stand before
the court in their own independent rights, without obli-
gation to any one not a party to the suit. Neither do any
of the corporate appellants show any transfer to them-

selves either directly or by *mesne* conveyances from any original settler of any water right or real estate to which such a right is appurtenant. As against the plaintiff, the evidence is quite consistent with the theory that these defendants either jumped the water rights and ditches of the original settlers or took possession of some abandoned works for their own use. Neither of these would give them priority over the plaintiff, for it would not amount to such a tacking as to relate back to any prior appropriation. The deduction is that, so far as priority over the plaintiff is concerned, none of the corporate appellants can claim before the date of its incorporation. Bearing in mind the dates on which they were severally incorporated, we see that none of them antedates the plaintiff's appropriation in 1865. As to the defendant Stoddard, who has owned since March 26, 1906, part of the Jacob Nessly homestead, the earliest date fixed by any witness for the use of water for irrigation on that holding, and then definite only as to the year, is stated by Mrs. Proebstel to be in 1868. Indeed, she says her father had water on the place several years before to water a small garden, using it when the season was dry and not using it when the season was wet; but this is not definite enough to overcome the direct testimony of the plaintiff and his witnesses to the effect that he made his appropriation in 1865.

16. The corporate appellants contend that the plaintiff is estopped to complain of their several diversions of the water because he, as sometime president and manager of the defendant Irrigation Canal Company, enlarged the ditch of that company and increased the flow of water therein. It is not clear how any of these defendants except the Irrigation Canal Company could in any event plead that as an estoppel because that conduct did not make them change their position in any respect. But granting that it could be urged, and that it is well pleaded,

in our judgment estoppel is not established by the evidence. Supposing the water of a stream to be the subject of appropriation, unless it is all included in the first taking, there may be successive appropriations as long as any water remains for such diversion, and the priorities will not be thus destroyed. It was consequently competent for the plaintiff, either as an individual or as a member of a corporation, after he had made the appropriation alleged in his complaint, to make another appropriation, either on the same land, or on other land without losing his priority or being estopped, if nothing else is shown. That is the condition of the affair as disclosed by the pleading and testimony. No estoppel or adverse user, or prescriptive right can arise under such circumstances until the appropriation of the first taker is sensibly diminished in quantity by the subsequent diversions. As long as there is enough water for all, no such hostile claim is initiated by a mere subsequent taking. *Bowman* v. *Bowman,* 35 Or. 279 (57 Pac. 546) ; *Carson* v. *Hayes,* 39 Or. 97 (65 Pac. 814) ; *Britt* v. *Reed,* 42 Or. 76 (70 Pac. 1029).

We turn now to the cross-petition of the defendant May Park Water Company, and the answers to it already noted. What has been already written here respecting the affirmative matter in the answers of the corporate appellants applies in principle to the cross-petition in question. In brief, the May Park Water Company assumes the role of a mere manager or trustee, while its articles do not authorize such ancillary relations, neither does it show any transfer to it of any of the property for which it defends. Like the corporate appellants, it alleges no interest in the water in its own right, and its charter does not give it the authority to act as a holding concern. It fails to prove its allegation of the capacity in which it is acting.

17. We cannot approve the decree of the circuit court so far as it attempts to adjudicate the rights of individuals who happen to be stockholders in the several corporations named. These people were not parties to this suit. The court might have caused them to be made parties, but it did not, and their individual interests are not involved in the issues joined. When they come before the court in their own right either as plaintiffs or defendants in appropriate litigation, it will be time enough to determine their rights and liabilities.

18. Aside from the cross-petition of the May Park Water Company, no issue was made between the defendant. In the absence of issues on the subject, the court cannot properly make a decree affecting the relations of the defendants to each other. *Nevada Ditch Co.* v. *Bennett,* 30 Or. 59 (45 Pac. 472: 60 Am. St. Rep. 777) ;. *Whited* v. *Cavin,* 55 Or. 98 (105 Pac. 396).

The result of the analysis is that the question is between the plaintiff and the defendants without reference to possible disputes among the latter, and that the plaintiff is prior in his appropriation to all of the appellants and, as we believe, from the evidence, to all the other defendants.

19. It is next in order to consider the quantity of water in the use of which the plaintiff is to be protected. The pleadings are framed as to all parties on the basis of a continuous flow of water at a certain rate in miner's inches under a six-inch pressure. Some of the appellants urge that, because the plaintiff alleges that he is entitled to "500 cubic inches of water, miner's measurement, under six-inch pressure," his claim is too indefinite to be considered. We deem this objection hypercritical. By rejecting the word "cubic" as surplusage, the meaning is plain, and, as the defendants do not appear to have been misled, the allegation in that respect will be so considered.

It is quite probable that, if the waters of the Grande

Ronde River were prudently applied under one intelligent and impartial management, there would be ample to accomplish most excellent results in that wide and fertile valley. The court, however, is bound by the case as stated in the pleadings. There are no data of either allegation or evidence whereby we can decree alternative use or a changing administration of the water to correspond with the change of crops. With the case-made as it is, we learn from the testimony that of all the settlers originally interested in the lands and water involved the plaintiff alone has maintained his holding from the beginning.

20. It is fairly established that in June, 1865, he appropriated at least 265 inches of water, miner's measurement, under a six-inch pressure, for use upon his lands. This is the amount allowed him by the decree of the circuit court, and as he has not questioned it upon appeal, we will not disturb it or consider whether the testimony shows a greater quantity in his appropriation. Within the meaning of *Seaweard* v. *Pacific Live Stock Co.*, 49 Or. 157 (88 Pac. 963), he has kept up his appropriation to the present time. He may not have used it every week or month in the same quantity or in the same spot; but he has used generally the whole amount and for the most part could have used more. It is reasonable to conlcude, under the circumstances, that in making his appropriation he had in mind the needs of the entire acreage of his holding, and he could use all his appropriation on one acre or spread it out over his whole farm as fast as he reduced it to cultivation. The true rule seems to be that, while one cannot appropriate water and do nothing with it, he is within his rights if he diligently does something useful with it, although it may not be the same thing continually.

Confining our decision, as we do, to the case-made and to the parties before us its effect is subject to the same limitation and will not be expanded beyond the question actually determined. New conditions as to the use of the

water not only as to quantity but also as to the time of user may arise hereafter. In view of the greater demand for water as the country becomes more thickly settled and considering the factors of variable seasons, abundant or scant precipitation of moisture, mutations of crops, and the like, the complexity of the situation is likely to increase; but the difficulty is not so much in the principles applicable, as in the administration of a scheme which is as mobile as water itself. Use of water by any one in the legal sense is always qualified by the condition that it must be restricted to such quantity and time of employment only as may be reasonably necessary for the accomplishment of some useful purpose either existing at the time or fairly contemplated in the future. *Simmons* v. *Winters,* 21 Or. 35 (27 Pac. 7: 28 Am. St. Rep. 727); *Hindman* v. *Rizor,* 21 Or. 112 (27 Pac. 13); *Mann* v. *Parker* 48 Or. 321 (86 Pac. 598).

Extravagant or wasteful application even to a useful project or any employment of water in a nonbeneficial enterprise is not included in the term use as contemplated by the law of waters. Then, too, when even an appropriator is not using the water it is available for the use of others. All these conditions may arise and be involved concerning the water question in the future, and our decision is not designed to determine them in advance. It only governs the parties to this suit on the case made by the pleadings.

21. The decree of the circuit court is modified so as to quiet the title of plaintiff as against all the defendants in his appropriation of June, 1865, for a constant flow at the rate of 265 inches, miner's measurement, under 6-inch pressure of the waters of the Grande Ronde River for use on his lands described in his amended complaint and to perpetually enjoin them from interfering with the same. The defendants will take nothing by their answers either against the plaintiff or each other. Each party will pay

its or his own costs and disbursements in the circuit court, and the plaintiff will recover from the appellants his costs and disbursements incurred in this court.

AFFIRMED.

MR. JUSTICE BEAN, having heard this cause in the lower court, took no part at the trial or in the consideration hereof.

MR. CHIEF JUSTICE EAKIN delivered the following concurring opinion:

I concur in the result of this decision, but I cannot give my consent to the following statement: "Primarily, any use of the water of a natural stream for a beneficial purpose is free to him who has an opportunity to take it without infringing upon the property rights of another. * * Concerning the mere diversion and use of water there is no difference between a non-riparian appropriator and riparian user, provided the former has a lawful right of access for that purpose to the stream from which the diversion is made. The essential condition of appropriation in the first place on public lands was the consent or acquiescence of the then riparian owner, the general government. The reason of the rule is not changed by the fact that the riparian owner is a private person provided the appropriator has his consent, or, what is equivalent, that the appropriator and the riparian owner are one and the same person. The deduction then is that if any one can lawfully gain access for that purpose to a non-navigable stream, and water is there not subject to use by another, such a one may appropriate it for his own use"—the effect of which statement is to abolish or do away with riparian rights as heretofore recognized in this State.